HARVINDER S. ANAND (SBN 243913)
ANAND LAW GROUP, P.C.
790 E. Colorado Boulevard, Suite 900
Pasadena, California 91101
Phone: (626) 239-7250
Fax: (626) 239-7150
Email: harv@anandlawgroup.com

Attorneys for Plaintiff
Samick Music Corp., dba "Health Mate"

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMICK MUSIC CORP., dba "HEALTH MATE,"<br><br>Plaintiff,<br><br>v.<br><br>GARRETT GORDON, an individual; NAOMI MASON, a.k.a. "KALI MASON," an individual; and DOES 1-25, inclusive,<br><br>Defendants. | **Case No. 8:20-CV-00395**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1. **FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1)(a)**<br>2. **FEDERAL TRADEMARK COUNTERFEITING, 15 U.S.C. § 1114(1)(b)**<br>3. **FEDERAL TRADEMARK AND TRADE NAME INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**<br>4. **FEDERAL TRADEMARK DILUTION, 15 U.S.C. § 1125(c)**<br>5. **CYBERPIRACY, 15 U.S.C. § 1125(d)(1)(A)**<br>6. **FEDERAL MISAPPROPRIATION OF TRADE SECRETS, 18 U.S.C. § 1836(b)**<br>7. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT**<br>8. **MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA'S UNIFORM TRADE SECRETS ACT, Cal. Civ. Code §§ 3426 *et seq.***<br>9. **UNFAIR COMPETITION, Cal. Bus. & Prof. Code §§ 17200 *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Samick Music Corp., doing business as "Health Mate" ("Health Mate" or "Samick"), and hereby complains of GARRETT GORDON ("Defendant Gordon"), an individual; NAOMI MASON, also known as "Kali Mason" ("Defendant Mason"), an individual; and Does 1-25, inclusive, as follows:

## I.      **INTRODUCTION**

1.      Samick brings this action against Defendant Gordon and Defendant Mason (together, "Defendants" or "Defendants Gordon and Mason") to enjoin and redress Defendants' serial violations of federal and California law to misappropriate Health Mate's customers and business.

2.      Among other things, Defendants have adopted and used without authorization Plaintiff's trademarks and the Health Mate corporate and trade names; counterfeited Plaintiff's trademarks; committed cyberpiracy by incorporating and using Health Mate's name in a competing domain and website; misrepresented to customers they were affiliated with Health Mate by purporting to send emails from Health Mate's proprietary domain; stolen Health Mate's trade dress; misappropriated Plaintiff's trade secrets; and engaged in unethical and unfair business competition, all to divert Health Mate's customers and business to themselves.

3.      Until July 2019, Health Mate retained Defendant Gordon as a consultant.  Upon being terminated, Defendant Gordon repeatedly threatened Health Mate, including by stating that Defendant Gordon would "take down fucking Health Mate to the bones."

4.      Since making those threats, Defendants Gordon and Mason, who works for and with Defendant Gordon, have engaged in a concerted and malicious campaign to misappropriate Health Mate's customers and business while simultaneously harming Health Mate's name, reputation, and goodwill.

5.     Defendants have used Health Mate's proprietary customer list and stolen Health Mate's trademarks, trade name, and corporate name to sell the very same products—saunas and sauna replacement parts—that Health Mate has sold in the United States since 1979; posted false and defamatory reviews about Health Mate on Yelp under fictitious customer names, to both harm Health Mate and divert business opportunities to Defendants Gordon and Mason; and attacked Health Mate's website three times, causing it to crash on one occasion.

6.      Accordingly, Plaintiff seeks an injunction, including a temporary restraining order, to enjoin Defendants from continuing to engage in their unlawful actions and monetary damages, including disgorgement of illegal profits obtained by Defendants Gordon and Mason.

## II.   THE PARTIES

7.     Samick is a California corporation.  It has offices at 6655 Knott Avenue, Buena Park, CA 90620, and in Gallatin, Tennessee.  In October 2018, Samick acquired the assets of PLH Products, Inc. ("PLH"), including PLH's business operations, the right to use the "Health Mate" trade name, the trademarks that are at issue in this case, and all the goodwill associated with PLH's business and trademarks.  PLH, which was founded in 1979, had used the trade name "Health Mate" extensively and had used the HEALTH MATE trademarks since March 1993.  All references to Health Mate's history, its business operations, its goodwill, and its ownership and use of the HEALTH MATE trademarks include PLH's history, business operations, and goodwill, and PLH's ownership and use of those trademarks, which were acquired and inherited by Samick.

8.     Plaintiff is informed and believes and thereon alleges that Defendant Gordon is and was at all times relevant to this Complaint a resident of Nevada.

9.     Plaintiff is informed and believes and thereon alleges that Defendant Mason is and was at all times relevant to this Complaint a resident of Nevada.

10.     Plaintiff is unaware of the true names and capacities of defendants

1    sued herein as Does 1-25, inclusive, and therefore sue these defendants by such

2    fictitious names.  Plaintiff will seek leave of the Court to amend this Complaint to

3    alleges the true names and capacities of such Does when they have been

4    ascertained.  Plaintiff is informed and believes and thereon alleges that each of the

5    fictitiously named defendants is responsible in some manner for the actions and

6    occurrences alleged herein, and that Plaintiff's damages as alleged herein were

7    proximately caused by their acts.

8         11.    Plaintiff is informed and believes and thereon alleges that at all times

9    relevant to this Complaint, Defendant Gordon, acting alone or in concert with

10   others, has formulated, directed, controlled, ordered, participated in, overseen, and

11   authorized and ratified the wrongful acts, practices, and omissions described

12   herein.

13        12.    Plaintiff is informed and believes and thereon alleges that the

14   Defendants each acted in concert with, and was the agent, employee, contractor,

15   partner, servant, and/or representative of each of the other Defendants, and in

16   doing the acts hereinafter alleged, each Defendant was acting in concert and within

17   the course and scope of the Defendant's authority as an agent, servant, officer,

18   employee and/or representative, with the permission and consent of the other

19   Defendants.  Plaintiff is informed and believes and thereon also alleges that

20   Defendants each ratified and/or authorized the acts of each of the other Defendants,

21   and therefore, Defendants are all liable for the acts of each of the other Defendants

22   insofar as any one of the Defendants is the principal and/or agent, employee,

23   contractor, partner, servant, and/or representative of the other Defendants.

24        13.    Plaintiff is informed and believes and thereon alleges that Defendants

25   have engaged in a conspiracy, common enterprise, and common course of conduct,

26   the purpose of which is and was to engage in the violations of law alleged in this

27   Complaint.  This conspiracy, common enterprise, and common course of conduct

28   continues to the present.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

### III. JURISDICTION AND VENUE

14. This action arises under the laws of the United States, including the Lanham Act and the Defend Trade Secrets Act of 2016, and the unfair competition law and common law of the State of California. This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 18 U.S.C. § 1836(c) and 28 U.S.C. §§ 1331 & 1338. This Court has supplemental jurisdiction over Plaintiff's California statutory and common law claims pursuant to 28 U.S.C. § 1367(a) in that those claims arise out of a common nucleus of operative facts as the federal claims, and the Court's exercise of jurisdiction over the state law claims will promote judicial economy, convenience, and fairness to the parties.

15. This Court has personal jurisdiction over Defendants because: (i) Defendants do business and/or actively solicit business in California; (ii) Defendants have continuous and ongoing business contacts with residents of California; (iii) Defendants have intentionally engaged in acts targeted at California that have caused harm within California; and (iv) Defendants have purposely availed themselves of the privilege of conducting business in California.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Defendants conduct business in and are subject to personal jurisdiction in this district and in that a substantial part of the acts or omissions giving rise to the claims asserted herein occurred and/or had effects in this district.

### IV. FACTUAL ALLEGATIONS

**A. Health Mate's History, Business and Valuable Intellectual Property.**

17. Samick manufactures and sells infra-red saunas to consumers throughout the United States, Europe, and Asia.

18. Health Mate has been selling various types of saunas since 1979, making it a leader in the sauna industry. Health Mate also has been either providing replacement parts to customers under warranty or selling replacement

parts for its saunas since 1979.

19.     As a company that depends both upon the quality of its products and the reliability of its brand, Health Mate has incurred costs to secure and protect its intellectual property interests.

20.     Among other efforts, Health Mate has filed federal trademark applications to protect the value of both the "HEALTH MATE" mark and logo in connection with the marketing and sale of saunas and other sauna-related products. Plaintiff owns the following live federal trademarks, which are registered with the United States Patent and Trademark Office ("USPTO"):

| Mark | Word/Design Mark | USPTO Reg. No. & Date | Services |
|---|---|---|---|
|  | "HEALTH MATE" | <u>No</u>: 2167332 <u>Date</u>: 6/23/1998 | <u>Class 11</u>: Saunas, namely, infra-red sauna, steam sauna, and dry sauna for heating purposes. |
| TYPED DRAWING | "HEALTH MATE" | <u>No</u>: 2167330 <u>Date</u>: 6/23/1998 | <u>Class 11</u>: Saunas, namely, infra-red sauna, steam sauna, and dry sauna for heating purposes. |
|  | DESIGN ONLY | <u>No</u>: 5745071 <u>Date</u>: 5/17/2019 | <u>Class 11</u>: Saunas; infra-red saunas; dry saunas for heating purposes. |

| Mark | Word/Design Mark | USPTO Reg. No. & Date | Services |
|---|---|---|---|
|  HEALTH MATE | DESIGN PLUS "HEALTH MATE" | No: 5980703<br>Date: 2/11/2020 | Class 11: Saunas; infra-red saunas; dry saunas for heating purposes.<br><br>Class 24: Towels; bath towels; towels for use in saunas.<br><br>Class 25: Robes; clothing, namely, bath robes for use in saunas. |

21.     True and correct printouts of the four active registrations set forth in the above table, from the United States Patent and Trademark Office's website, are attached hereto as **Exhibits 1-4** (collectively, "HEALTH MATE Trademarks" or "Trademarks").

22.     In various forms, Samick has been using the distinctive "HEALTH MATE" Trademark in the sauna industry since March 1993, *i.e.* for almost 27 years.

23.     Plaintiff also has been using the following distinctive "HEALTH MATE" logo (the "HEALTH MATE Logo" or "Logo") in the sauna industry since March 2015:

///

///

///

///

| **HEALTH MATE Logo** |
| --- |
|  |

24.    The HEALTH MATE Logo consists of the HEALTH MATE Trademark (*i.e.*, the words "HEALTH MATE") and "a lachrymiform shape trisected by two asymmetrical vertical swirls." (*See* Exh. 3.)  Plaintiff has used a distinctive red color with the HEALTH MATE Logo since March 2015.

25.    The HEALTH MATE Trademark and HEALTH MATE Logo are strong and distinctive when used in connection with the marketing and sale of saunas and sauna-related products, such as towels and robes for use with saunas and foot saunas.

26.    As a result of Plaintiff's exclusive and substantial use of the HEALTH MATE Trademark for almost 27 years and their exclusive and substantial use of the Logo for approximately five years, both the Trademark and Logo have come to uniquely distinguish Health Mate's products from those offered by its competitors.

27.    The HEALTH MATE Logo incorporates the HEALTH MATE Trademark.  Health Mate is entitled to the exclusive use of the HEALTH MATE Trademarks and Logo in commerce throughout the United States on the goods listed in the applications to register the Trademarks and Logo, including without limitation, for the marketing and sale of infra-red saunas, dry saunas for heating purposes, and steam saunas.

28.     Plaintiff also possesses common law rights to the exclusive use of the HEALTH MATE Trademarks and HEALTH MATE Logo in commerce throughout the United States.

29.     In addition to using the trade name "Health Mate," Plaintiff also uses the trade names "Health Mate Sauna" and "Health Mate Wellness" in connection with the sale of their products.

30.     Samick's employees include the HEALTH MATE Logo in the signature line of their emails, including in communications with customers to help recipients associate the sender with Health Mate and the HEALTH MATE Logo, and to continue to strengthen and reinforce the Health Mate brand and HEALTH MATE Logo.

31.     Plaintiff has spent substantial sums to advertise and promote the HEALTH MATE Trademark and the Logo.  For instance, Plaintiff prominently displays the Logo and provides information about its products on the Internet via official websites located at www.healthmatesauna.com and www.healthmatewellness.com.

32.     Each press release issued by Health Mate is released with its Logo displayed across the newswire.  The Logo is also prominently displayed (in different colors) on Health Mate's LinkedIn page and also generally displayed on other social media sites used by the public to associate Health Mate with the products it offers.

33.     Plaintiff spends substantial sums each year to market its products under the HEALTH MATE Logo, including:

a.     Advertising at industry events each year, including the Consumer Electronics Show in Las Vegas.  At each such event, Health Mate prominently displays its Logo, distributes marketing materials bearing the Logo, and employees in attendance wear lapel pins depicting the Logo.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

b. Advertising in publications using the HEALTH MATE Logo to create awareness about its product offering. The creative element of the advertisement centers around the Logo, using it as the recognizable element of Health Mate's brand.

c. Health Mate's marketing mix also includes mailing informational brochures and product catalogues to individual households to help promote its brand.   Such marketing materials prominently display the Logo.

d. Health Mate uses its Logo to promote the brand through branded apparel, branded supplies, and branded technology accessories.

e. The Logo also is the symbol displayed to promote the Health Mate business and personal application available in the Google Play Store.  In this instance, the Logo is the main way the public can identify the app is associated with Health Mate.  The app has been a way for Health Mate to attract new customers to use its products.

f. The Logo is also prominently displayed on the log-in pages of Health Mate's online systems for its customers.  In these instances, the Logo is displayed to assure clients that they are accessing company-maintained technology.

g. Health Mate generates invoices with the Logo prominently featured on the top and it ships products with the Logo featured on the label.  In these instances, the Logo serves to associate the contents of the invoice and mailing with Health Mate and has been the main way one would associate all communications with Health Mate.

34. Samick has also used the Logo in recruiting efforts to attract new talent to the company.  The Logo is prominently displayed on Health Mate's job application platform to help prospective employees identify with the brand.

35. Plaintiff has expended substantial amounts of time, effort and money to ensure that the relevant public associates the HEALTH MATE Trademark and the HEALTH MATE Logo with its products. As a result, the Health Mate trade

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

name, the HEALTH MATE Trademark, and the HEALTH MATE Logo have achieved a reputation for excellence in the sauna industry.

36.     Plaintiff enjoys substantial demand and goodwill for the products its markets and sells under the HEALTH MATE Trademark and the HEALTH MATE Logo, which have enjoyed widespread success.  Accordingly, the Trademark and Logo are significant assets of Plaintiff's business.

37.     The relevant public has come to exclusively associate the HEALTH MATE Trademark and HEALTH MATE Logo with saunas and sauna-related products that originate from Plaintiff.

**B.     Defendant Gordon Maliciously Threatened to Harm Health Mate in July 2019, Immediately After the Company Terminated Him.**

38.     Prior to July 2019, Defendant Gordon was in independent contractor of Health Mate.[1]  Defendant Gordon provided marketing, website support, and customer support services to Health Mate.  Defendant Gordon worked out of Health Mate's office in Buena Park, California approximately one-to-two times per month.

39.     With the authorization of Plaintiff, Defendant Gordon also sold replacement parts to customers who owned Health Mate saunas that were no longer under product warranty.  Defendant Gordon purchased the Health Mate-certified replacement parts directly from Plaintiff and he was authorized to resell those parts to Health Mate's customers under the supervision of Plaintiff.

40.     Defendant Mason worked with and for Defendant Gordon while Defendant Gordon provided services to Health Mate.  Defendant Gordon compensated Defendant Mason directly.  Health Mate did not ever make any payment to Defendant Mason for services she provided to Defendant Gordon.

---

[1]     Defendant Gordon was an independent contractor of PLH until Samick acquired PLH's assets.

-11-

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

41.     On July 20, 2019, Andrew You, Health Mate's Chief Operating Officer, called Defendant Gordon to inform him that all of Defendant Gordon's services to Health Mate were terminated effective immediately.  Mr. You read a termination letter to Defendant Gordon.

42.     During the telephone call on July 20, 2019, Health Mate asked Defendant Gordon to return all access information for any and all accounts Defendant Gordon had created for Health Mate, Health Mate Sauna or Health Mate Wellness.[2]  Defendant Gordon never complied with this request.

43.     Immediately upon being informed of his termination, Defendant Gordon responded by threatening Plaintiff.  Defendant Gordon stated:

        a.     "I'm gonna turn everything the fuck off."

        b.     "How about that?"

        c.     "And how about this too?"

        d.     "I'm gonna take down fucking Health Mate to the bones."

        e.     "You realize how much keys [a manager under prior ownership of the company] gave me to the company?  Do you understand?"

        f.     "Does fucking Samick understand?"

        g.     "You guys understand?"  "You guys understand?"

        h.     "You don't understand?"  "Ok."

        i.     "Give me a week and let's see what fucking happens."

44.     Defendant Gordon hung up the phone on Mr. You after making the foregoing threats.

45.     Health Mate sent Defendant Gordon a confirmatory termination letter after the July 20, 2019 telephone call.  Although the letter was sent to Defendant Gordon at the home address he had provided to Plaintiff, the termination letter was returned undeliverable. A true and correct copy of the termination letter is attached

---

[2]     Plaintiff also uses the trade names "Health Mate Sauna" and "Health Mate Wellness" in connection with the sale of its products.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

hereto as **Exhibit 5.**

46.     While he was a consultant, Defendant Gordon controlled access information for, among other things, Health Mate's official websites (located at www.healthmatesauna.com and www.healthmatewellness.com).   Defendant Gordon also had access to Health Mate's landline telephone accounts as an authorized user.  Despite Mr. You's request on July 20, 2019, Defendant Gordon did not return access information for Plaintiff's official websites.   Rather, Health Mate itself gained access to the websites by contacting third parties and proving that the accounts in fact belonged to Plaintiff.  Health Mate also transferred its landline telephone accounts to a new service provider so that Defendant Gordon no longer would have access to them.  The previous provider would not remove Gordon from the accounts without his assent.

**C.     Defendants Made Good on Gordon's Threats.**

47.     Defendant Gordon's threats on July 20, 2019 were not just idle words. Defendant Gordon knew he would suffer substantial financial losses when he was terminated by Health Mate.  Unhappy with this prospect, Defendant Gordon retaliated against Health Mate by executing a deliberate, concerted, and malicious campaign to harm and injure Plaintiff's name, reputation, goodwill, business, and economic interests, just as Defendant Gordon had threatened on July 20, 2019.

48.     Plaintiff is informed and believes and thereon alleges that Health Mate's termination of Defendant Gordon also would have caused Defendant Mason to suffer financial losses because Defendant Mason worked with and for Defendant Gordon while Health Mate retained Defendant Gordon as a consultant. When Health Mate terminated Defendant Gordon, Defendant Mason likely stood to lose a source, if not a substantial source, of income.

49.     Accordingly, Plaintiff is informed and believes and thereon alleges that Defendant Mason has engaged in a conspiracy, common enterprise, and common course of conduct with Defendant Gordon, the purpose of which is and

1    was to engage in the violations of law alleged in this Complaint

2        50.    Defendants' deliberate campaign to harm Plaintiff has included

3    (a) stealing Health Mate's trademarks, trade name, corporate name, and trade dress

4    (*i.e.*, its packaging) and misappropriating Health Mate's business, including

5    through the unauthorized sale of saunas and sauna parts under Health Mate's trade

6    and corporate names; (b) misappropriating and using trade secret information in

7    Plaintiff's proprietary customer database to sell saunas and sauna parts under

8    Health Mate's trade and corporate names; (c) committing cyberpiracy;

9    (d) launching three attacks on Health Mate's official website; and (e) executing a

10   coordinated a public campaign against Health Mate through the dissemination of

11   false online negative reviews, with the dual goals of harming Health Mate's

12   reputation while simultaneously causing Health Mate customers to purchase

13   products directly from Defendants.

14   **D.    Defendants Gordon and Mason Have Committed Trademark**

15        **Infringement and Misappropriated Health Mate's Business.**

16        *1.    Defendants' Misappropriation of Health Mate's Trade Secrets.*

17        51.    While serving as a consultant for Health Mate, Defendant Gordon

18   acquired and set up Pipedrive, a comprehensive customer relationship management

19   software.  Health Mate used Pipedrive as its database for managing contacts with

20   customers who required service, including customers who purchased replacement

21   parts or received parts under warranty.  Defendants Gordon and Mason had full

22   access to Pipedrive while they worked with Health Mate.

23        52.    Pipedrive included, among other information, Health Mate's

24   confidential customer names, addresses, telephone numbers, email addresses, and

25   order histories for sauna replacement parts.  At the time of Defendant Gordon was

26   terminated, Pipedrive included information for approximately two years of Health

27   Mate's sales and for approximately 6,500 customers.

28

-14-

53.     The information in Pipedrive, which was password protected at all times, was and remains confidential and sensitive and constitutes Health Mate's trade secrets.  It has not been disclosed publicly.  Other than Health Mate employees, only Defendant Gordon and Defendant Mason had access to information in Pipedrive.

54.     Plaintiff authorized Defendant Gordon and Defendant Mason to have access to its customer information in Pipedrive only while Defendant Gordon was a consultant for Health Mate.

55.     While serving as a consultant, Health Mate informed Defendant Gordon he must maintain the confidentiality of information in Pipedrive.  Defendants Gordon and Mason also understood and knew that they were permitted to have access to Health Mate's information in Pipedrive only while they had a business relationship Health Mate.

56.     Information in Pipedrive, including regarding Health Mate's customer needs and preferences, has significant economic value because it allows anyone who otherwise would not have this information to gain a distinct advantage through familiarity with Plaintiff's approximately 6,500 customers in the sauna industry.  Health Mate used extensive efforts and incurred expenses to develop its trade secret information.

57.     On July 20, 2019, Health Mate notified Defendant Gordon that his services to Health Mate were terminated effective immediately.  After receiving such notice, Defendants Gordon and Mason knew that Health Mate did not authorize Defendants to use any of Health Mate's trade secrets, including its secret customer information in Pipedrive.

58.     Despite Health Mate's request on July 20, 2019, Defendant Gordon has not returned all access information for any and all accounts Defendant Gordon had created for Health Mate, Health Mate Sauna or Health Mate Wellness, including for Pipedrive.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

59.     As of the filing of this Complaint, Defendants Gordon and Mason continue to retain all of the trade secrets stored in Pipedrive at the time of Defendant Gordon was terminated.

2.     _Defendants Have Used the Information in Pipedrive to Sell Saunas Using Health Mate's Brand and Trade Name._

60.     While serving as a consultant for Health Mate, Gordon registered the email address "healthmatesaunas@gmail.com" ("Infringing Email Address No. 1"), which incorporates the HEALTH MATE Trademark and its trade name.

61.     While serving as a consultant for Health Mate, GORDON also registered the email address "Healthmatesaunaoffical@gmail.com" ("Infringing Email Address No. 2"), which also incorporates the HEALTH MATE Trademark and its trade name, and purports to be Health Mate Sauna's "official" email address.

62.     After being terminated, Defendants Gordon and Mason also knew that Health Mate did not authorize Defendants to use the HEALTH MATE Trademark, Health Mate's trade name or corporate name, or any variation of the foregoing, for any reason whatsoever, including in Infringing Email Address 1 or Infringing Email Address 2.

63.     Plaintiff is informed and believes and thereon alleges that Defendants Gordon and Mason have engaged in unfair competition and illegally derived profits by misappropriating and using Health Mate's trade secrets in Pipedrive and selling saunas to Health Mate's customers under the false guise of being affiliated or associated with Health Mate.

64.     For example, on November 18, 2019, Defendant Gordon made a sale in the amount of $3,995 by charging a customer's Visa credit card account ending in 5513.  The sale was made under the name "Health Mate Infrared Sauna" and/or "HM Corporate Sales."  "Garrett Gordon" was reported as the "Cashier" for the sale.  As discussed _infra_, Defendant Gordon used an email address incorporating

Health Mate's trade name (*i.e.*, which is very similar to Infringing Email Address No. 1) to process the credit card transaction.  (*See* Exh. 6.)

65.    Between November 25, 2019 and February 2, 2020, Defendant Gordon made eight more credit card sales in this same way.  Specifically, all of the sales were made under the name "Health Mate Infrared Sauna" and/or "HM Corporate Sales."  "Garrett Gordon" was reported as the "Cashier" for each sale and Defendant Gordon made each sale by using an email address very similar to Infringing Email Address No. 1.  Defendant Gordon made the following eight additional sales:

a.    On November 25, 2019, a sale in the amount of $895 by charging a Visa credit card account ending in 3827.  (*See* Exh. 7.)   A credit of $200 for this sale was issued on January 13, 2020.  (*See* Exh. 8.)

b.    On November 25, 2019, a second sale in the amount of $2,800 by charging a Visa credit card account ending in 3434.  (*See* Exh. 9.)

c.    On November 25, 2019, a third sale in the amount of $3,695 by charging a Mastercard credit card account ending in 9300.  (*See* Exh. 10.)

d.    On November 25, 2019, a fourth sale in the amount of $3,695 by charging a Discover credit card account ending in 6025.  (*See* Exh. 11.)

e.    On December 8, 2019, a sale in the amount of $3,895 by charging an American Express credit card account ending in 7170.   (*See* Exh. 12.)

f.    On December 9, 2019, a sale in the amount of $3,995 by charging a Discover credit card account ending in 8324.  (*See* Exh. 13.)

g.    On December 12, 2019, a sale in the amount of $3,895 by charging a Visa credit card account ending in 6955.  (*See* Exh. 14.)

h.    On February 2, 2020, a sale in the amount of $4,395 by charging a Visa credit card account ending in 0739.  (*See* Exh. 37.)

66.    Health Mate obtained all of the above-described credit card transaction information and credit card receipts through links in emails sent by

-17-

Clover, a credit card processing company, to the following email address: "healthmatesauna@gmail.com."  Emails sent to that address were received by an employee of Health Mate in Buena Park, California.

67.     When Defendant Gordon processed the credit card transactions described in paragraphs 64 and 65, he had emails sent to "healthmatesauna@gmail.com" instead of "healthmatesaunas@gmail.com," *i.e.*, Infringing Email Address No. 1.  The email address to which the transaction receipts were sent omits the "s" after "healthmatesauna."  The employee received the emails because Defendant Gordon apparently omitted the "s" in the email account he used to receive receipts of the credit card transactions he executed.

68.     Based on the high dollar amount of the above sales[3] Plaintiff is informed and believes and thereon alleges that eight of those transactions by Defendant Gordon involved the sale of a sauna and one involved the sale of sauna replacement part(s).

69.     Each of the credit card transaction receipts attached at **Exhibits 6-14 and 37** states the seller was "Health Mate Infrared Sauna" and/or "HM Corporate Sales."  Because Defendant Gordon sold saunas to customers under the Health Mate name, the buyers' credit card statements also would reflect "Health Mate Infrared Sauna" or "HM Corporate Sales" as the merchant who sold the products they purchased.  The email receipts were sent by Clover, a credit card processing company, and the same seller information reported in the emails would appear on the buyers' credit card statements.

70.     Given Defendant Gordon's unauthorized use of Health Mate's trade name to sell saunas to customers, Plaintiff is informed and believes and thereon alleges that after being terminated, Defendant Gordon sold the saunas set forth in paragraphs 64 and 65 by improperly using Health Mate's trade secrets and

---

[3]     True and correct copies of the transaction receipts and accompanying emails for the sales are attached as **Exhibits 6-14 and 37**.

customer information, including information stored in Pipedrive, to contact and solicit customers.  Defendant Gordon would not have identified the seller as "Health Mate Infrared Sauna" and/or "HM Corporate Sales" in credit card transactions unless he had also previously identified himself to the customers as being affiliated or associated with Health Mate while trying to consummate the sales.  In so doing, Defendant Gordon created the false and fraudulent impression to customers that Defendants have some affiliation or relationship with Health Mate.

71.    Plaintiff is informed and believes and thereon alleges that Defendants have been using Infringing Email Address 1 and/or Infringing Email Address 2 to communicate with and solicit customers.  After Defendant Gordon was terminated, Defendant Mason contacting former Health Mate customers on at least two occasions to sell purported Health Mate replacement parts:

a.    On August 28, 2019, Defendant Mason exchanged emails with a former Health Mate customer to sell a "power supply and or controller."  This contact occurred after Mason had sent an email to the customer on June 24, 2019 (while Gordon was a consultant for Health Mate) to advertise a "Health Mate 4th of July Special."  (*See infra* ¶ 90(a) & Exh. 21.)  The customer ordered the foregoing parts from Defendants, but they did not deliver all the parts as promised. The customer then contacted Health Mate to complain, stating he believed he had purchased parts from Health Mate directly.

b.    In August 2019, Mason solicited a second customer for the sale of Health Mate "replacement parts."  Once again, the customer ordered the parts, but Defendants did not deliver them as they had promised.  And once again, the customer contacted Health Mate to complain and explained that he believed he had purchased parts from Health Mate directly.  In an email to Health Mate, the customer explained: "In August [2019] I received an email from Kali asking me if I still needed the parts as she was offering them with a discount so the total was

$380.00.  At this point, our sauna control panel was becoming unusable, so I went ahead and ordered the parts.  I received the below order confirmation from healthmate [sic]."  (*See infra* ¶ 89(e) & Exh. 20 (quoted statement included in Oct. 18, 2019 email from C.W. to Ms. Siglar).)

72.     Based on the foregoing facts, Defendants have been soliciting Health Mate customers to purchase saunas as well as purported Health Mate replacement parts.  Defendants have been using Infringing Email Address No. 1 and/or Infringing Email Address No. 2 to communicate with and solicit customers because Defendants likely would send emails from an address that contains "Health Mate" in the name to make it appear to customers they are dealing with Health Mate directly, not someone unaffiliated with the company.  This is the reason that Defendant Gordon started using Infringing Email Address No. 1 and Infringing Email Address No. 2 in the first place.

73.     In addition to the sales sale set forth in paragraphs 65 and 65, Defendants made additional sales of saunas in the same manner as described above.  (*See* Exh. 6.)

74.     Defendants Gordon and Mason engaged in unfair competition and misappropriated Health Mate's customers and business as one element of Defendants' multifaceted campaign to harm and injure Health Mate, as Defendant Gordon threatened on July 20, 2019.

3.     *Defendants Also Used Health Mate's Trademarks and Logo to Sell Parts on a Competing Website.*

75.     Defendant Gordon owns and controls the domain name "healthmateparts.com" (the "Infringing Domain") and operates the website located at www.healthmateparts.com (the "Infringing Website").  Prior to terminating Defendant Gordon in July 2019, Health Mate authorized him to sell its company-certified replacement parts through its website located at www.healthmatesauna.com, not the Infringing Website.

76.     After being terminated on July 20, 2019, Defendants Gordon and Mason knew that Health Mate did not authorize Defendants to use the HEALTH MATE Trademark, the HEALTH MATE Logo, the Health Mate trade name, or any variation of the foregoing, to sell any products, including through the Infringing Website.

77.     Defendants nonetheless have (a) incorporated the HEALTH MATE Trademark and Health Mate trade name into the names of the Infringing Domain and Infringing Website; (b) used and included the HEALTH MATE Trademark, Health Mate trade name, and the HEALTH MATE Logo in connection with the advertisement and sale of products, including through the Infringing Website; and (c) used and included the HEALTH MATE Trademark, HEALTH MATE trade name, and the HEALTH MATE Logo on packaging of products they sold.

78.     After being terminated, Defendants Gordon and Mason also have engaged in unfair competition and illegally derived profits by selling replacement parts for Health Mate products through the Infringing Website, which they actively operated through on or about October 18, 2019.  Defendant Gordon thereafter replaced the content with a single page stating the site is "Under Construction." Defendants Gordon and Mason used the Infringing Domain and Infringing Website as another element of Defendants' multifaceted campaign to misappropriate Health Mate's business and to harm and injure Health Mate.

79.     Without Health Mate's permission or authorization, Defendants modified Health Mate's actual Trademark and used Health Mate's trade name in advertising on the Infringing Website, as shown below:



**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

80.    The infringing trademark modified Health Mate's genuine Trademark to add the words "Replacement Parts," but otherwise used the protected Trademark (*i.e.*, the word mark "HEALTH MATE"), including the same font and the same distinctive red color used in Health Mate's Logo (hereinafter, the "Infringing Trademark").  Health Mate does not use "Replacement Parts" in conjunction with its Logo or in the sale of its company-certified replacement parts.

81.    The Infringing Website's homepage displayed an approximately 6-minute video in which Defendant Gordon made false and fraudulent statements about Health Mate.  Among other false statements, Defendant Gordon represented in the video that he had manufactured an "upgraded" version of Health Mate's power supply box and that Defendant Gordon's parts were superior to Health Mate's genuine replacement parts.

82.    Defendant Gordon's claim that he had manufactured superior replacement parts for Health Mate saunas was false and fraudulent.  In truth and in fact, Defendant Gordon sold genuine Health Mate replacement parts through the Infringing Website to the same customers who otherwise would have purchase those products directly from Health Mate:

a.    The purportedly "upgraded" power box in Defendant Gordon's video appeared visually to be identical to Health Mate's own power supply box in that the purported replacement box was the exact same color as Health Mate's own power supply box and the purported replacement box had the same green sticker from Health Mate's factory and the same red cap included on every Health Mate power supply box.

b.    Prior to being terminated on July 20, 2019, Defendant Gordon purchased Health Mate-certified power supply boxes, which Defendant Gordon then was authorized to resell to customers.  Plaintiff is informed and believes and thereon alleges that Defendants sold to Health Mate customers who visited the Infringing Website the very same Health Mate-certified power supply boxes that

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Defendant Gordon had purchased from Plaintiff.

c.    Defendants began selling products through the Infringing Website by no later than September 10, 2019.  (*See infra* ¶ 89(a).)  Plaintiff is informed and believes and thereon alleges Defendant Gordon did not have sufficient time after his termination on July 20, 2019, to manufacture a purportedly "upgraded" power box, which would have required fining a manufacturer and complying with countless laws and regulations in the United States.

83.    Accordingly, Gordon was passing off to customers the Health Mate-certified power supply boxes he purchased from Plaintiff as "upgraded" parts that Defendant Gordon falsely claimed to have manufactured himself.

84.    Defendant Gordon removed the false video from the Infringing Website when he replaced the content with the page stating the site is "Under Construction."  However, the same video continues to appear on You Tube and is available at:  https://www.youtube.com/watch?v=bNDwdVOm2gI.  The following false claim appears below the video: "Health Mate Parts can upgrade your sauna with new parts and US based technical support.  Don't rely on poor service, call the experts at www.healthmateparts.com."

85.    Accordingly, the harm to Health Mate from the false video and the Infringing Website is ongoing and continuous.

4.    *Defendants Misappropriated Health Mate's Customers and Business.*

86.    Regardless of whether Defendant Gordon was selling Health Mate company-certified power supply boxes, users who encountered the Infringing Website were likely to believe that it was affiliated with or a part of Health Mate, or that Health Mate approved of or had a business relationship with Infringing Website.

87.    This confusion, mistake, and deception regarding the source of Defendants' products and regarding any perceived affiliation between the Infringing Website and Health Mate resulted in Defendants diverting Health

-23-

Mate's customers; misappropriating Health Mate's business; significantly harming Health Mate's reputation, goodwill, Trademarks, and Logo; and diluting Health Mate's Trademarks and Logo.

88.    The harm to Health Mate was exacerbated significantly by the fact that Defendants did not deliver parts to numerous customers who ordered from Defendants, including but not limited customers who found Defendants through the Infringing Website.  Defendants also did not respond to other customers' inquiries after they placed orders with Defendants.

89.    Numerous customers called Health Mate representatives in Buena Park, California to complain about orders they placed with Defendants, including through the Infringing Website.  Each customer would inform Health Mate of an order he/she had placed and inquire why it had not been fulfilled as promised. When Health Mate did not find the customer's order in its records, the customer would send Health Mate the order confirmation they had received from Defendants.  Plaintiff informed each customer that Health Mate is not affiliated with Health Mate Parts.  Each of the customers responded by informing Health Mate that they believed they were purchasing replacement parts directly through Health Mate.  The following customers called Health Mate representatives in Buena Park, California to complain about orders placed with Defendants through the Infringing Website:

a.    On September 24, 2019, customer W.J. contacted Health Mate to complain about not receiving an order placed through the Infringing Website on September 10, 2019.  (*See* Exh. 15.)

b.    On September 24, 2019, customer D.F. contacted Health Mate to complain about Defendants not responding to inquiries about parts ordered through the Infringing Website on September 4, 2019.  (*See* Exhs. 16 & 17.)

c.    On October 9, 2019, customer G.E. contacted Health Mate to complain about not receiving an order placed through the Infringing Website on

September 5, 2019.  (*See* Exh. 18.)

d.    On October 16, 2019, customer J.H. contacted Health Mate to complain about not receiving an order placed through the Infringing Website on September 18, 2019.  (*See* Exh. 19.)

e.    On October 18, 2019, customer C.W. contacted Health Mate to complain about not receiving an order placed through the Infringing Website on October 5, 2019.  (*See* Exh. 20.)

90.    Other customers also called Health Mate to complain about products they purchased from Defendants, even though they had not ordered through the Infringing Website:

a.    On December 3, 2019, customer R.B. contacted Health Mate to complain about not receiving all parts he had ordered from Defendant Mason on November 13, 2019.  Customer R.B. purchased the replacement parts for his Health Mate sauna in response to an email R.B. had received in or about June 2019 from Defendant Mason offering discounted Health Mate replacement parts.  (*See* Exh. 21.)  Before making the sale to R.B. on November 13, 2019, Defendant Mason exchanged a text message with R.B. in which Defendant Mason identified herself as "Kali Health Mate" and listed her email address as "kali@healthmateparts.com."  (*See* Exh. 22.)

b.    On December 11, 2019, customer J.M. contacted Health Mate to complain about not receiving all parts he had ordered from Defendants Gordon and Mason on December 5, 2019.  (*See* Exh. 23.)

c.    On January 2, 2020, customer C. Z. contacted Health Mate to complain about not receiving a part she had ordered from Defendants on December 17, 2019.  (*See* Exh. 24.)

///

///

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

91.     The customers discussed above in paragraphs 89 and 90[4] told Health Mate representatives that they believed that had purchased their replacement parts from Health Mate, not some unaffiliated company.  For example, customer G.E. stated in email that he was "confuse[d] . . . whom I . . . paid [for] the power unit supply."  (*See* Exh. 18.)  The customer believed he was dealing with Health Mate directly because he ordered from "Health Mate Parts."

92.     Similarly, customer C.W. stated he believed he was dealing with Health Mate because he "received [an] order confirmation from healthmate [sic]," which had actually been sent by Defendants for a sale initiated through the Infringing Website.  (*See* Exh. 20.)

93.     A third customer, C.Z., stated that she believed she had "[p]urchased through health mate directly."  (*See* Exh. 24.)

94.     Indeed, several of the customers told Plaintiff that they were "shocked" to learn that they had purchased products from a company not affiliated with Health Mate, when they were informed that "Health Mate Parts" has no connection with Health Mate.  To rectify the problems Defendants created, Health Mate shipped products from Buena Park, California to some of the customers who complained about Defendants and assisted other customers who had installation issues with products purchased from Defendants.

    *5.*    *Defendants Misappropriated Health Mate's Trademark and Logo in Invoices.*

95.     Each of the customers described above were misled into believing they were dealing directly with Health Mate because, in addition to the false impression and confusion created by the Infringing Website, Defendants intentionally took additional steps to mislead customers and misappropriate business from Health Mate.

---

[4]     Attached hereto as **Exhibits 15-24** are true and correct redacted copies of emails Plaintiff received from the customers discussed in paragraphs 89 and 90.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

96.     For example, Defendants used a counterfeited version of Health Mate's Trademark and Logo and included Health Mate's actual business address and actual customer service telephone number in invoices they sent to customers who place orders through the Infringing Website.  The top of Defendants' invoices included the following:



97.     Except for adding the words "Replacement Parts" and using a filled-in red background, Defendants make no effort to disguise their outright misappropriation of Health Mate's actual Logo:



**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

98.    The red color used by Defendants in their illegal logo (the "Counterfeit Mark" and "Counterfeit Logo") is identical to the red color used by Health Mate in its actual Logo.

99.    Customers also were deceived by Defendants because their invoices stated, "Thank you for being a loyal Health Mate Sauna customer," even though Defendants were not authorized to use Health Mate's trade name after they were terminated.  True and correct redacted copies of Defendants' invoices to the customers described above are attached as **Exhibits 25-29**.

100.   After being terminated on July 20, 2019, Defendants Gordon and Mason were not authorized to use the name "Health Mate Fulfillment," which incorporated Health Mate's trade name, or to use or modify the Logo in any way. Nor did Health Mate authorize Defendants to use or modify its Logo for any purpose, including in the invoices Defendants sent to customers who placed orders through the Infringing Website.

101.   Furthermore, Health Mate did not authorize Defendant Gordon or Defendant Mason to use its business address or customer service telephone number for any reason whatsoever.

6.    *Defendants Defrauded Customers by Purporting to Send Emails from Health Mate's Email Address.*

102.   Defendants also defrauded customers and misappropriated business from Health Mate by sending "confirmatory" emails to customers who placed orders through the Infringing Website.  Defendants sent those emails purportedly from the email address "Health Mate Fulfillment <support@healthmatesauna.com>."

103.   One of Plaintiff's official websites is located at www.healthmatesauna.com.  Plaintiff controls all emails sent from or to email addresses associated with that domain, including the email address "support@healthmatesauna.com."

104.   Defendants' emails to customers, purporting to be sent from the email address "support@healthmatesauna.com," were fraudulent because (a) Plaintiff did not authorize Defendant Gordon, Defendant Mason, or anyone else to use any variation of Health Mate's trade name, including "Health Mate Fulfillment," to send emails to customers after July 20, 2019; and (b) Defendants had no authority to use or access the email address "support@healthmatesauna.com" after July 20, 2019.

105.   Through a review of their email records, Plaintiff has confirmed that emails purportedly sent by Defendants from the address "support@healthmatesauna.com" were in fact not sent from that email address.

106.   Rather, Defendants sent emails from an unknown address but intentionally spoofed Plaintiff's "support@healthmatesauna.com" address to make customers falsely believe they were buying products directly from Health Mate.

107.   "Spoofing" an email address means to display a false email address in the "from" field to disguise the true and correct sender of the email.

108.    Defendants spoofed Plaintiff's "support@healthmatesauna.com" address in emails to customers who purchased products, including through the Infringing Website, to deceive customers into believing they were dealing directly with Health Mate.

109.   Defendants also fraudulently included Health Mate's business address and customer service telephone number in the "confirmatory" emails to customers, without Health Mate's permission.  (*See* Exhs. 15-24.)

*7.   Defendants Stole Health Mate's Trade Dress.*

110.   To further deceive customers into believing the Infringing Website was associated with Health Mate and that customers actually were purchasing products through Health Mate, Defendants also intentionally used the confusing and deceptive name "Health Mate Sauna Fulfillment" without authorization to make sales and distribute products.  A redacted copy of Defendants' shipping label

1    to customer D.F., described above in paragraph 89(b) of this Complaint, is attached

2    as **Exhibit 30**.

3        8.    _Health Mate Was Harmed Significantly by the Infringing Website._

4        111.   Defendants and the Infringing Website exploited Health Mate's

5    goodwill and business reputation and by attracting users through their unauthorized

6    use Health Mate's trade name, Trademarks, and Logo and deceiving customers

7    into believing they were dealing directly with Health Mate.  The harm to Health

8    has been compounded significantly by Defendants' failure to deliver products as

9    promised to numerous customers, who believed they were dealing directly with

10   Health Mate.  The customers then called Health Mate to complain.

11       112.   The Infringing Website's bare-bones layout and appearance diluted

12   and tarnished Health Mate's Trademarks by negatively associating Health Mate

13   with a low-quality website whose purpose was to divert Health Mate's business.

14       113.   Even worse, Defendant Gordon made materially false and disparaging

15   statements about Health Mate and its employees on the Infringing Website to

16   bolster sales of purported replacement parts for Health Mate products, as part of

17   Defendants' concerted negative campaign against Health Mate.

18       114.   For example, Defendant Gordon used the Infringing Website to

19   falsely tout himself as the "manufacturer [of] upgraded Health Mate parts,

20   engineered by USA technicians" and to falsely inform the public that "Health Mate

21   no longer has the ability to give you the technical support you need or deserve to

22   fix your sauna."  These two statements were false and defamatory because in truth

23   and fact (a) on information and belief, Defendant Gordon actually sold genuine

24   Health Mate replacement parts that Defendant Gordon passed off as purportedly

25   superior parts; and (b) Health Mate possessed the ability to and in fact did provide

26   technical support to customers who required repair of their saunas.

27       115.   On or about October 18, 2019, Defendant Gordon learned that Health

28   Mate intended to file suit against him for many of the acts described herein.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Knowing that the content on the Infringing Website was illegal, Defendant Gordon replaced all the false and fraudulent content with a single "landing page" that states the site is "Under Construction."

116.   The "landing page" continues to appear as of the filing of this Complaint.  The bare-bones layout and appearance of the single webpage continue to dilute and tarnish Health Mate's Trademarks by negatively associating Health Mate with a low-quality "website."

117.   Notwithstanding the changes made to the Infringing Website, Defendants have continued to illegally use the HEALTH MATE Trademarks and Logo and the Health Mate trade and corporate names, as shown by, *inter alia*, Defendants' sales to R.B. on November 13, 2019, their sale to J.M. on December 5, 2019, and their sale to C.Z. on December 17, 2019.  (*See supra* ¶ 89.)

118.   Defendants also continue to make the same false statements about Health Mate in the You Tube video available at:
https://www.youtube.com/watch?v=bNDwdVOm2gI.

**E.   Defendants Attacked Health Mate's Website Three Times, Causing It to Crash on August 14, 2019.**

119.   On July 20, 2019, Defendant Gordon bragged that he had the "keys . . . to the company" and threatened that he was "gonna turn everything the fuck off."  Defendant Gordon further threatened to "take down fucking Health Mate to the bones."

120.   As part their multi-faceted plan to harm Health Mate, Defendant Gordon attacked one of Health Mate's website on three occasions over the ensuing weeks.

121.   Plaintiff is informed and believes and thereon alleges that within a few days of Defendant Gordon threatening Health Mate, Defendant Gordon attempted to hack into Plaintiff's website located at www.healthmatesauna.com. This attack was unsuccessful.

122.   Plaintiff is informed and believes and thereon alleges that on August 14, 2019, Defendant Gordon launched another attack on Health Mate's website at www.healthmatesauna.com.  The second attack caused Health Mate's website to crash.  None of Health Mate's customers or prospective customers were able to access its website for approximately 12 hours.

123.   Websites Depot Inc., Plaintiff's website operator on August 14, 2019, assigned three coders to work on restoring Health Mate's hacked website, commencing work in the evening on August 14, 2019.  The three coders modified the set-up of Health Mate's Website, so that Defendant Gordon would be unable to access it again.  Websites Depot restored Health Mate's website sometime in the morning on August 15, 2019.

124.   Defendant Gordon nonetheless continued to target Plaintiff's website. Plaintiff is informed and believes and thereon alleges that within a couple of weeks of August 15, 2019, Defendant Gordon again launched an attack on Health Mate's website located at www.healthmatesauna.com.   This attack also was unsuccessful.

125.   Plaintiff is informed and believes and thereon alleges that Defendant Gordon was responsible for the three malicious attacks on Health Mate's website based on, *inter alia*, the following facts:

a.   Prior to July 2019, Defendant Gordon was responsible for maintaining Health Mate's website located at www.healthmatesauna.com. Defendant Gordon had created the website and he was responsible for ensuring that the Website was active and operating properly.

b.   Defendant Gordon therefore possessed confidential information about the setup of the website, how it could be accessed, and its vulnerabilities. Defendant Gordon also was highly knowledgeably about technology, which was one of the reasons Defendant Gordon was responsible for creating and maintaining Health Mate's website.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

c.      Defendant Gordon possessed both the technological ability and the confidential knowledge and information about Health Mate's website to launch the three attacks Health Mate experienced.

d.      Defendant Gordon attempted to intimidate Health Mate on July 20, 2019 by reminding it, "You realize how much keys [a manager under prior ownership of the company] gave me to the company?  Do you understand?" Defendant Gordon also threatened Health Mate, stating "Give me a week and let's see what fucking happens," a few days before the first website attack.  The three attacks all occurred within the span of a few weeks of Defendant Gordon threatening he was "gonna take down fucking Health Mate to the bones."

e.      Prior to the first attack, Health Mate's websites had not been targeted for hacking.  Health Mate had not experienced anything remotely like the three website attacks it experienced in the weeks after Defendant Gordon threatened Health Mate.

f.      No other person had threatened Health Mate at any time prior to the three website attacks.

**F.    <u>Defendant Gordon Maliciously Threatened to Create an "Entire Campaign" Against Websites Depot.</u>**

126.   Defendant Gordon apparently believed— incorrectly—that Websites Depot, Health Mate's website company, had played a role in Health Mate's decision to terminate its relationship with Defendant Gordon.

127.   Accordingly, on August 8, 2019 Defendant Gordon also threatened Websites Depot by submitting the following "contact" form to Websites Depot through its own website (emphases added):

> Unethical business destroys business. I found out everything you lied to Health Mate about to get me fired.  Not only do I have email proof of this but **<u>I plan on creating an entire campaign against you</u>** so other potential customers know what's coming.  All legal because it's true.  You fabricated nonsense.  You will come clean

with Health Mate or this process starts in 48 hours.  You think you're smart?  I'm smarter with more recourses [sic] . . . and I don't lose!  Your scam will be exposed! **Try me**.  [Emphases added.]

128.   The foregoing "contact" form was submitted by "Garett" with the email address "Gordon@teamvalorem.com," which Health Mate knows to be Defendant Gordon's email address.  Websites Depot did not respond to Defendant Gordon's threat.  A true and correct printout of Defendant Gordon's "contact" form to Websites Depot is attached hereto as **Exhibit 31.**

**G.**   **Defendants Posted Numerous False Negative Reviews About Health Mate to Harm Its Reputation.**

129.   Taken together, Defendant Gordon's threats against Health Mate and his threat to "create[e]an entire campaign against" Websites Depot prove Defendant Gordon's intent, willingness, and ability to execute a public campaign to harm a business's reputation.

130.   This is precisely what Defendant Gordon and Defendant Mason executed against Health Mate, including by intentionally disseminating false negative reviews to disparage and harm Health Mate's name, reputation, goodwill, business, and economic interests.

*1.*   *Defendants Submitted a False Review on Yelp in the Name of a Fictitious "Customer."*

131.   Defendants started their negative public campaign by posting a false "review" about Health Mate four days after Defendant Gordon threatened to "take down fucking Health Mate to the bones" and warned Health Mate to "[g]ive [him] a week and let's see what fucking happens."  Plaintiff is informed and believes and thereon alleges that on July 24, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Francine F.":

///

///

-34-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

> It looks like Healthmate is VERY unstable now that they terminated the company that's been helping me fix my sauna. I had great confidence talking to Kali and Mark. Now I'm extremely concerned owing [sic] this product. For future repairs. Before [sic] Kali I couldn't even get a replacement remote shipped to me. Sauna's break and if the company can't keep a good efficient customer service department they are doomed. Be very cautious with Healthmate. Truly, disappointed in their new owners? Or style of conducting business.

A true and correct printout of the above submission is attached hereto as **Exhibit 32**.

132. The July 24, 2019 purported submission from "Francine F." was false because:

a. Health Mate maintains a database containing, among other things, the name and address of all customers who have purchased a Health Mate sauna. Health Mate's database contains no customer matching the first name "Francine" and the last name initial "F." Nor does Health Mate's database contain any similar-named customer residing in "La Verne, CA," as the submission claims.

b. The purported writer claims she "couldn't even get a replacement remote shipped to" her. Health Mate keeps a log of all requests made by customers for replacement parts. Health Mate has no record of any customer named "Francine F"—or any other customer—requesting a "replacement remote" on or about July 24, 2019.

c. The absence of any record or evidence in Health Mate's records of a customer named "Francine F." in "La Verne, CA" or any record of the purported complaint posted in the Yelp submission establishes that no such customer actually exists. Rather, Defendants fabricated the fictitious customer identity "Francine F." and submitted the false "review" to harm Health Mate, as Defendant Gordon had warned four days earlier, on July 20, 2019.

-35-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

      d.     The submission falsely asserts Health Mate is "VERY unstable."

    133.    Defendants posted the July 24, 2019 submission on Yelp based on, *inter alia*, the following facts:

      a.     Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

      b.     Defendant Gordon directed the three attacks on Health Mate's website in the weeks following his threats.

      c.     Defendant Gordon threatened to "create[e]an entire campaign against" Websites Depot, proving Defendant Gordon's intent, willingness, and ability to direct a false negative public campaign.

      d.     The absence of any record or evidence in Health Mate's records of a customer named "Francine F." in "La Verne, CA."

      e.     Defendants fabricated the fictitious customer identity "Francine F." and submitted the false "review" to harm Health Mate, as Defendant Gordon warned he would four days earlier.

      f.     In contrast, the submission makes a positive assertion about "Mark," the name Defendant Gordon used when dealing with customers as a consultant for Health Mate, and "Kali," who is Defendant Mason.  The purpose of the false July 24, 2019 submission was to disparage Health Mate and bolster the reputations of Defendants Gordon and Mason.

      g.     To create the false impression that other legitimate customers agreed with "Francine F," "Kasia G." voted for the July 24, 2019 submission on Yelp.  Health Mate knows "Kasia G." to be Kasia Gordon, Defendant Gordon's wife.

///

///

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

2. *Defendant Mason Submitted a False Review in Her Own Name on October 2, 2019.*

134. On October 2, 2019, Defendant Mason posted the following "review" on Yelp:

> I have an older sauna that was sold with a lifetime warranty. Not only will they not honor it bit [sic] they cant [sic] even fix it.  Their recourse of action was to sell me a new sauna at a "discounted price" which when I looked into it with other members of their sales team was not a discount at all.  Apparently, they are under new ownership and dont [sic] care about their existing clients. Only the newer clients.  I am purchasing a new sauna with a company that actually is ethical and accountable to their customers.  Obviously Health Mate no longer feels they have to have either qualities.  [sic]  I do not want this company to contact me further as I do not trust their word.  I just felt others should know that they will not be considered [sic] new business after buy [sic] a sauna from them.

A true and correct printout of the above submission is attached hereto as **Exhibit 33**.

135. The October 2, 2019 submission from Defendant Mason was false because:

   a.    Defendant Mason never contacted or spoke to any Health Mate representative about repairing a sauna she owns.

   b.     Defendant Mason never contacted or spoke to any Health Mate representative to invoke a Health Mate product warranty for a sauna she owns.

   c.    Health Mate never refused to honor a product warranty for a Health Mate sauna owned by Defendant Mason.

   d.    Health Mate is in fact able to repair the saunas it sells and has been doing so for approximately 20 years.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

e.     Health Mate never offered to sell Defendant Mason a new sauna, let alone a "discounted" sauna, in lieu of repairing a sauna she owns.

f.     Health Mate cares about all of its customers, not just "newer clients," as Defendant Mason claimed.

g.     The submission falsely alleges Health Mate is not an "ethical" company and that it is not "accountable" to customers.

136.   Realizing that her October 2, 2019 submission was false and defamatory Defendant Mason deleted it by on or about October 3, 2019.

137.   Thereafter, Defendants reverted to their strategy of disseminating defamatory statements about Health Mate on Yelp in the name of fictitious non-existent "customers."

3.     *Defendants Submitted a False Review in the Name of Fictitious "Debbie O." on October 3, 2019.*

138.   Plaintiff is informed and believes and thereon allege that on October 3, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Debbi O.":

> I have an older sauna that came with a lifetime warranty.  When it stopped working I called to have it repaired like it says Health Mate is required to do in our warranty contract.  Not only would they not honor the contract but told me they would sell me a sauna at a discounted price. After talking with some of their sales people [sic] I found out it was not a discount at all.  Apparently since coming under new ownership they no longer feel that they have to be accountable to their existing customers and it became clear that they only care about selling new saunas.  The ethical company this once was it is no longer. I have since purchased a new sauna from a company that actually believes in customer service and accountability.  It is sad that a corporation that used to be as good as this one has fallen so low as this.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

A true and correct printout of the above submission is attached hereto as **Exhibit 34**.

139.   The October 3, 2019 purported submission from "Debbi O." was false because:

a.   Health Mate's database contains no customer matching the first name "Debbie" and the last name initial "O."  Nor does Health Mate's database contain any similar-named customer residing in "Thornton, CO," as the submission claims.

b.   Health Mate has no record of any customer named "Debbi O." contacting the company on or about October 3, 2019.

c.   The absence of any record or evidence in Health Mate's records of a customer named "Debbi O." in "Thornton, CO" or any record of the purported complaint posted in the Yelp submission establishes that no such customer exists. Rather, Defendants fabricated the fictitious customer identity "Debbi O." and submitted the false "review" to harm Health Mate, as Defendant Gordon warned on July 20, 2019.

d.   No Health Mate representative has offered to sell a customer a new sauna at a discounted price in lieu of repairing the customer's product under a valid unexpired warranty.

e.   Health Mate cares about all of its customers, not just newer clients, as the submission claimed.

f.   The submission falsely alleges Health Mate "is no longer" an "ethical" company and that it does not "believe[] in customer service and accountability."

140.   Defendants posted the false October 3, 2019 submission on Yelp based on, *inter alia*, the following facts:

a.   Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

-39-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

b.      Defendant Gordon directed the three attacks on Health Mate's website in the weeks following his threats.

c.      On July 24, 2019, Defendants submitted the false negative review on Yelp under the fictitious name "Francine F."

d.      On October 2, 2019, Defendant Mason submitted the false negative review on Yelp under her own name.  Knowing the submission was false, Defendant Mason subsequently deleted it.

e.      The submission on October 3, 2019 under the fictitious name "Debbi O." bears the following similarities to Defendant Mason's October 2, 2019 submission under her own name:

1.      Both submissions refer to an "older sauna" with a "lifetime warranty."

2.      Both submissions falsely claim Health Mate refused to honor its product warranty.

3.      Both submissions falsely claim Health Mate offered to sell the customer a new sauna at a discounted price in lieu of repairing the product under the warranty, and that the purported offer price was "not a discount at all."

4.      Both submissions falsely claim Health Mate cares only about its newer clients or customers.

5.      Both submissions falsely claim Health Mate is not an "ethical" company and that it is not "accountable" to customers.

f.      The absence of any record or evidence in Health Mate's records of a customer named "Debbi O." in "Thornton, CO" or any record of the purported complaint posted in the Yelp submission establishes that no such customer exists.

g.      Defendants fabricated the fictitious customer identity "Debbi O." and submitted the false "review" to harm Health Mate, as Defendant Gordon warned he would on July 20, 2019.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

h.     To create the false impression that other legitimate customers agreed with "Debbie O," "Kasia G." voted for the October 3, 2019 submission on Yelp.  "Kasia G." is Kasia Gordon, Defendant Gordon's wife.

141.   On or about October 11, 2019, Yelp removed the false October 3, 2019 submission.  Plaintiff is informed and believes and thereon alleges that Yelp did so because the submission was obviously false.

4.     *Defendants Submitted a False Review in the Name of Fictitious "Renee R." on October 7, 2019.*

142.   Plaintiff is informed and believes and thereon alleges that on October 7, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Renee R.":

> I couldn't believe the amount of ignorance and bigotry from this company.  Crystal Siglar is the one who answers the phone.  She told me that a tech would only talk to me after I filled out an online support form.  She acted like a tech would call me per my request in the support form.  I did not receive a call from a tech.  I got an email giving me a diagnosis that no one had talked to me about from the same woman who answered the phone and said she was not a tech!  Well come to find out, there is NO tech team.  No one with the word "tech" anywhere near their professional title in this company.  Not only did Crystal lie to me about having technicians, she is completely incompetent when it comes to saunas and how they operate.  When I asked about the tech support they had only a few months prior, she said that HealthMate is under new ownership and decided to go a different direction with this department!  Who ever owns this company has now lost my business and all my referrals I sent to HealthMate.  Bad choice in recent changes!!!!!!  I'm going with a company with more knowledgeable and competent employees.

A true and correct printout of the above submission is attached hereto as **Exhibit 35**.

143.    The October 7, 2019 purported submission from "Renee R." was false because:

a.    Health Mate's database contains no customer matching the first name "Renee" and the last name initial "R."  Nor does Health Mate's database contain any similar-named customer residing in "Kingman, AZ," as the submission claims.

b.    Health Mate has no record of any customer named "Renee R." contacting the company on or about October 7, 2019.

c.    Health Mate Customer Service Representative Crystal Siglar did not, as the submission claims, speak to any customer named "Renee R." on or about October 7, 2019.

d.    Accordingly, "Renee R." in "Kingman, AZ" does not exist. Rather, Defendants fabricated the fictitious customer identity "Renee R." and submitted the false "review" to harm Health Mate, as Defendant Gordon warned on July 20, 2019.

e.    The submission falsely alleges Health Mate is "ignoran[t]" and "bigot[ed]."

f.    Crystal Siglar did not tell any customer named "Renee R." on or about October 7, 2019 that "a tech would only talk to ["Renee R."] after [she] filled out an online support form.

g.    Health Mate did not send an email to any customer named "Renee R." on or about October 7, 2019 "giving ["Renee R."] a diagnosis" for a Health Mate sauna.

h.    The submission falsely alleges Health Mate does not have a "tech team," that "Crystal [Siglar] lie[d] to ["Renee R."], and that "Crystal [Siglar] is completely incompetent when it comes to saunas and how they operate."

i.    The submission falsely alleges Health Mate's employees are not "knowledgeable" or "competent."

-42-

144. Defendants posted the October 7, 2019 submission on Yelp based on, *inter alia*, the following facts:

a.  Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

b.  Defendant Gordon directed the three attacks on Health Mate's website in the weeks following his threats.

c.  On July 24, 2019, Defendants submitted the false negative review on Yelp under the fictitious name "Francine F."

d.  On October 2, 2019, Defendant Mason submitted the false negative review on Yelp under her own name.  Knowing the submission was false, Defendant Mason subsequently deleted it.

e.  On October 3, 2019, Defendants posted the false "review" on Yelp under the name of purported customer "Debbi O."

f.  To create the false impression that other legitimate customers agreed with "Renee R," "Kasia G." voted for the false October 7, 2019 submission on Yelp.  "Kasia G." is Kasia Gordon, Defendant Gordon's wife.

g.  To further create the false impression that other legitimate customers agreed with "Renee R," "Naomi M." voted for the false October 7, 2019 submission on Yelp.  "Naomi M." is Defendant Mason.

h.  The October 7, 2019 submission makes a positive assertion about "the tech support [Health Mate] had only a few months prior," thereby referencing without name Defendant Gordon and Defendant Mason.  The purpose of the false October 7, 2019 submission was to disparage Health Mate and bolster the reputation of the Defendants.

145. On or about October 11, 2019, Yelp removed the false October 7, 2019 submission.  Plaintiff is informed and believes and thereon alleges that Yelp did so because the submission was obviously false.

5. _Defendants Submitted a False Review in the Name of Fictitious_ _"Jacob D." on October 8, 2019._

146. Plaintiff is informed and believes and thereon alleges that on October 8, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Jacob D.":

> A [sic] 6 months ago I was working with a really knowledgeable lady in their tech department about fixing an older unit. She was great but at the time I could not afford to fix it. I called in over the course of the past week and no [sic] answered the call until my 5th day in a row calling [sic] she said he [sic] name was Crystal and she was not a tech and if I wanted to speak to one I had to fill out an on line [sic] ticket. No tech called but I got and email telling be [sic] that I had to re submit [sic] all the information I provided on the ticket by this Crystal girl. First I had asked for a call not an email. Second I wanted to talk to the tech that had helped me previously but I was told that they had out sourced [sic] that company and no longer had a solution for me because they would not help me repair the one I have but would sell me a new unit instead of [sic] a discount price…..the discounted price was not very discounted. I understand wanting to cut costs but this is just plain crazy. My paperwork said lifetime warranty and obviously that's a joke but the company got rid of the techs that knew anything about these units. Obviously they don't care about their customers that are in older [sic]. Just the new young ones who want to purchase newer saunas

A true and correct printout of the above submission is attached hereto as **Exhibit 36**.

147. The October 8, 2019 purported submission from "Jacob D." was false and defamatory because:

a. Health Mate's database contains no customer matching the first name "Jacob" and the last name initial "D." Nor does Health Mate's database contain any similar-named customer residing in "Pueblo, CO," as the submission claims.

-44-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

b. Health Mate has no record of any customer named "Jacob D." contacting the company on or about October 8, 2019.

c. Health Mate Customer Service Representative Crystal Siglar, referenced in the submission as "Crystal," did not speak to any customer named "Jacob D." on or about October 8, 2019.

d. Accordingly, "Jacob D." in "Pueblo, CO" does not exist. Rather, Defendants fabricated the fictitious customer identity "Jacob D." and submitted the false "review" to harm Health Mate, as Defendant Gordon warned on July 20, 2019.

e. Health Mate Customer Service Representative Crystal Siglar did not tell any customer named "Jacob D." on or about October 8, 2019 that he "had to fill out an on line [sic] ticket" to "speak to" a "tech."

f. Health Mate did not send an email to any customer named "Jacob D." on or about October 8, 2019 sating he "had to re submit [sic] all the information [he] provided on the ticket."

g. Health Mate did tell any customer named "Jacob D." on or about October 8, 2019 that the "company . . . no longer had a solution for me [or that it] would not help [the customer] repair" his sauna, or that Health Mate would instead "sell [him] a new unit . . . [at] a discount[ed] price."

h. Health Mate cares about all of its customers and clients, not just "new young ones who want to purchase newer saunas," as this submission claimed.

148. Plaintiff is informed and believes and thereon alleges that Defendants posted the October 8, 2019 submission on Yelp based on, *inter alia*, the following facts:

a. Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

b. Defendant Gordon directed the three attacks on Health Mate's

-45-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

website in the weeks following his threats.

        c.      On July 24, 2019, Defendants submitted the false negative review on Yelp under the fictitious name "Francine F."

        d.      On October 2, 2019, Defendant Mason submitted the false negative review on Yelp under her own name.  Knowing the submission was false, Defendant Mason subsequently deleted it.

        e.      On October 3, 2019, Defendants posted the false "review" on Yelp under the name of purported customer "Debbi O."

        f.      On October 7, 2019, Defendants posted the false "review" on Yelp under the name of purported customer "Renee R.":

        g.      The October 8, 2019 submission makes a positive assertion about "a really knowledgeable lady in [Health Mate's] tech department" that the writer purportedly "work[ed] with" six months earlier and asserts that Health Mate "got rid of the techs that knew anything about these units."  These assertions referred to Defendant Gordon and Defendant Mason without actually naming them.  The purpose of the false October 8, 2019 submission was to disparage Health Mate and bolster the Defendants' reputations.

149.  On or about October 11, 2019, Yelp removed the false October 8, 2019 submission.  Plaintiff is informed and believes and thereon alleges that Yelp did so because the submission was obviously false.

150.  Defendants' posting of numerous false and defamatory "reviews" under fictitious identities was malicious, fraudulent, deliberate, and willful.

## H.    <u>Defendants Have Refused to Cease and Desist Their Unauthorized Actions and Disgorge the Illicit Profits They Derived.</u>

151.  As noted above, on or about October 28, 2019 Defendant Gordon learned that Health Mate intended to file suit against him.  Plaintiff thereafter contacted both Defendant Gordon and Defendant Mason in an effort to resolve this matter without litigation, but those efforts were not successful.

152.   Defendants knew about the allegations in this Complaint and that their actions were illegal based on Plaintiff's notices to Defendants during settlement efforts.

153.   Defendants have continued to engage in the illegal actions set forth in this Complaint even after being notified of these violations.  Accordingly, Defendants' conduct has been intentional, willful, and malicious.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADEMARK INFRINGEMENT**
**[15 U.S.C. § 1114(1)(a))]**
**(Against All Defendants)**

154.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

155.   The above acts of Defendants constitute trademark infringement of Plaintiff's federally registered HEALTH MATE Trademarks and Logo in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

156.   Without authorization from Plaintiff, Defendants have used and continue to use the virtually identical and confusingly similar Infringing Trademark, Counterfeit Logo, and Health Mate-related designations in connection with the sale, offering for sale, distribution, or advertising of sauna and sauna-related products, which infringe Plaintiff's HEALTH MATE Trademarks and Logo.  Defendants have caused actual confusion, mistake, or deception in the marketplace, which is harming consumers and Plaintiff.

157.   Defendants' use of the Infringing Trademark and Counterfeit Logo in connection with the sale, offering for sale, distribution, or advertising of sauna and sauna-related products is likely to continue to cause confusion, mistake and deception among the general consuming public as to the source of Health Mate's genuine Trademarks and Logo and its genuine product offerings.

158.   Defendants' conduct has been knowing, deliberate, reckless and willful.

159.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

160.   Defendants' actions have caused monetary damages to Plaintiff in an amount not yet determined.

161.   Defendants' actions were in conscious and willful disregard of Plaintiff's federal trademark rights, and the resulting damage to Plaintiff warrants treble damages and the recovery of attorneys' fees and costs.

162.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

## SECOND CLAIM FOR RELIEF
### FEDERAL TRADEMARK COUNTERFEITING
### [15 U.S.C. § 1114(1)(b))]
### (Against All Defendants)

163.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

164.   Defendants have publicly advertised, sold, offered to sell, and distributed products in interstate commerce while using the Infringing Trademark, the Counterfeit Logo, and false Health Mate-related designations, all in direct competition with Plaintiff and without authorization or consent to use the HEALTH MATE Trademarks or Logo, but with full knowledge of Plaintiff's notorious prior rights in those marks.

-48-

165.   Defendants have reproduced, counterfeited, copied, and colorably imitated the HEALTH MATE Trademarks and Logo or displayed a spurious designation that is identical with, or substantially indistinguishable from, the HEALTH MATE Trademarks and/or Logo.  Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the HEALTH MATE Trademarks and Logo to labels, prints, and packages intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of Defendants' products, which is likely to cause confusion, to cause mistake, or to deceive customers.

166.   Defendants' unauthorized use of the HEALTH MATE Trademarks and Logo on or in connection with Defendants' products was intentional and was done with notice and full knowledge that the use was unauthorized by Plaintiff.  Accordingly, Defendants' actions constitute willful counterfeiting of the HEALTH MATE Trademarks and Logo in violation of 15 U.S.C. § 1114(1)(b), entitling Plaintiff to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

167.   Defendants' conduct has directly and proximately caused Plaintiff to suffer damage to the valuable HEALTH MATE Trademarks and Logo, and other damages in an amount to be proved at trial.

168.   Pursuant to 15 U.S.C. § 1117(c), Plaintiff may elect, at any time before final judgment is entered by the trial court, to recover, instead of actual damages and profits for Defendants' violations of 15 U.S.C. § 1114(b)(1), an award of statutory damages up to (a) $200,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as the Court considers just; or (b) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as the court considers just.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

169.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

## THIRD CLAIM FOR RELIEF
**FEDERAL TRADEMARK AND TRADE NAME INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**
**[15 U.S.C. § 1125(a)]**
**(Against All Defendants)**

170.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

171.   Defendants' actions also constitute common law trademark infringement, trade name infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

172.   Plaintiff has valid and protectable common law rights in the HEALTH MATE Trademarks and HEALTH MATE Logo.

173.   Defendants are unfairly competing with Plaintiff by virtue of Defendants' unauthorized use of Plaintiff's HEALTH MATE Trademarks and Logo and Health Mate's trade, domain, and corporate names in interstate commerce to sell, offer for sale, distribute and promote saunas and sauna-related products, which falsely lead consumers to believe that Defendants' products are somehow affiliated or associated with, originate from, or are sponsored or approved by Plaintiff.

174.   Plaintiff is informed and believes and thereon alleges that Defendants have misinformed, deceived, or misled customers in the sauna and sauna-related market into believing that that Defendants' product offerings are actually "Health

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Mate" products or that Defendants' product offerings are affiliated or associated with Plaintiff.  These representations were made in commercial advertising or promotion of Defendants' business and products and are false and misleading and do not properly represent the nature or characteristics of Defendants' products.

175.   Defendants' use of Health Mate designations and the Health Mate trade, domain, and corporate names in combination have actually deceived and/or have the tendency to deceive a substantial segment of the consuming public and the marketplace, and has impaired Plaintiff's goodwill and reputation.

176.   Plaintiff is informed and believes and thereon alleges that Defendants' actions were done with knowledge and/or reckless disregard, and with the intent to cause confusion and to mislead and deceive the purchasing public and that Defendants' statements have actually deceived or have a tendency to deceive a substantial segment of the purchasing public.

177.   Defendants' actions have injured and damaged Plaintiff.

178.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and are entitled to monetary damages in an amount not yet determined.

179.   Defendants' actions were in conscious and willful disregard of Plaintiff's Trademarks and Logo and Plaintiff's trade name, and the resulting damage to Plaintiff warrants treble damages and attorneys' fees and costs.

180.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

///
///
///
///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

## FOURTH CLAIM FOR RELIEF
### FEDERAL TRADEMARK DILUTION
### [15 U.S.C. § 1125(c)]
### (Against All Defendants)

181.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

182.   Defendants' actions constitute trademark dilution by blurring and trade name dilution by blurring in violation of 15 U.S.C. § 1125(c).

183.   Defendants' actions also constitute trademark dilution by tarnishment and trade name tarnishment by blurring in violation of 15 U.S.C. § 1125(c).

184.   The HEALTH MATE Trademarks and Logo are famous and distinctive.  Defendants are actively impairing, and are likely to impair, the distinctiveness of the HEALTH MATE Trademarks and Logo, and the Health Mate trade, domain, and corporate names, which significantly harm Plaintiff's capacity to identify and distinguish their products.

185.   Defendants are actively tarnishing, and are likely to tarnish, the reputation of Plaintiff and the HEALTH MATE Trademarks and Logo, and Health Mate's trade, domain, and corporate names.

186.   Defendants' actions dilute the HEALTH MATE Trademarks and Logo, and Health Mate's trade, domain, and corporate names and cause injury to Plaintiff in violation of 15 U.S.C. § 1125(c).

187.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and are entitled to monetary damages in an amount not yet determined.

188.   Defendants intentionally, willfully, and maliciously diluted and continue to dilute the HEALTH MATE Trademarks and Logo, and Health Mate's trade, domain, and corporate names.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

189.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

**FIFTH CLAIM FOR RELIEF**
**CYBERPIRACY**
**[15 U.S.C. § 1125(d)(1)(A)]**
**(Against Defendant Gordon and Does 1-25)**

190.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

191.   Defendants' actions constitute cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

192.   The HEALTH MATE Trademarks and Logo are famous and distinctive.

193.   Defendants have had and continue to have a bad faith intent to profit from the Infringing Domain Name, Infringing Website, and Infringing Email Address 1 and Infringing Email Address 2, and from exploiting Plaintiff's well-known, registered HEALTH MATE Trademarks and Logo, and Health Mate's trade, domain, and corporate names.

194.   Defendants committed cyberpiracy by registering and using the Infringing Domain Name and Infringing Website, which are confusingly similar to the HEALTH MATE Trademarks and the Health Mate trade, domain, and corporate names.  The HEALTH MATE Trademarks and Logo are inherently distinctive and were distinctive at the time Defendants committed cyberpiracy.

195.   Defendants' actions have been knowing, deliberate, willful, and malicious.

-53-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

196.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and is entitled to monetary damages in an amount not yet determined.  Pursuant to 15 U.S.C. § 1117(a), Plaintiff is further entitled to treble damages and attorneys' fees and costs.

197.   Pursuant to 15 U.S.C. § 1117(d), Plaintiff may elect, at any time before final judgment is entered by the trial court, to recover, instead of actual damages and profits for Defendant Gordons' violations of 15 U.S.C. § 1125(d)(1), an award of statutory damages up to $100,000 per domain name, as the Court considers just.

198.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

### SIXTH CLAIM FOR RELIEF
**FEDERAL MISAPPROPRIATION OF TRADE SECRETS**
**[18 U.S.C. § 1836(b)]**
**(Against All Defendants)**

199.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

200.   Defendants have misappropriated Plaintiff's trade secrets in violation of 18 U.S.C. § 1836(b).

201.   Plaintiff's sensitive customer information, including historical purchasing information in Pipedrive, were and remain confidential, non-public trade secrets.  Plaintiff expended significant time and other resources to develop those trade secrets.

202.   Defendants knew when they were provided access to Pipedrive that Plaintiff's trade secrets must remain confidential at all times and that Defendants

were not permitted to retain or use Plaintiff's trade secrets for any reason other than to provide services to Health Mate while Defendant Gordon was retained as a consultant.

203.   After being terminated on July 20, 2019, Defendants Gordon and Mason knew that Plaintiff did not authorize Defendants to acquire, use or disclose Health Mate's trade secrets, including the information in Pipedrive, for any reason.

204.   Defendants disclosed or used Plaintiff's trade secrets without the express or implied consent of Plaintiff by use of improper means to acquire knowledge of the trade secrets, including through misrepresentation or breach or inducement of a breach of a duty to maintain secrecy of Plaintiff's trade secrets. Defendants thereby misappropriated Plaintiff's trade secrets.

205.   Defendants further disclosed or used Plaintiff's trade secrets without the express or implied consent of Plaintiff, knowing or having reason to know at the time of disclosure or use that knowledge of Plaintiff's trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of Plaintiff's trade secrets or limit the use of the trade secrets.  Defendants thereby misappropriated Plaintiff's trade secrets.

206.   Defendants further disclosed or used Plaintiff's trade secrets without the express or implied consent of Plaintiff, knowing or having reason to know at the time of disclosure or use that knowledge of Plaintiff's trade secrets were derived from or through a person who owed a duty to Plaintiff to maintain the secrecy of the trade secrets or limit the use of the trade secrets.  Defendants thereby misappropriated Plaintiff's trade secrets.

207.   Defendants further misappropriated Plaintiff's trade secrets by retaining the information in Pipedrive without the continued authorization of Plaintiff and by not returning all the information to Plaintiff as requested.

208.   Defendants misappropriated Plaintiff's trade secrets and used the HEALTH MATE Trademarks and Logo and Health Mate's trade, domain, and

corporate names to make sales Defendants otherwise would not have consummated, thereby misappropriating Plaintiff's customers and business.

209.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and are entitled to monetary damages in an amount not yet determined, including damages for actual loss caused by Defendants' misappropriation of Plaintiff's trade secrets and damages for any unjust enrichment caused by Defendants' misappropriation of Plaintiff's trade secrets that is not addressed in computing damages for actual loss.

210.   Defendants willfully and maliciously misappropriated Plaintiff's trade secrets, justifying both an award of exemplary damages in an amount not more than two times the amount of the monetary damages and an award of reasonable attorneys' fees.

211.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

### SEVENTH CLAIM FOR RELIEF
### CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT
### (Against All Defendants)

212.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

213.   Defendants' actions alleged herein constitute common law infringement of Plaintiff's HEALTH MATE Trademarks and HEALTH MATE Logo.

214.   Plaintiff has valid and protectable common law rights in the HEALTH MATE Trademarks and HEALTH MATE Logo.

-56-

215.   Plaintiff is the senior user of the HEALTH MATE Trademarks and HEALTH MATE Logo.

216.   Defendants' unauthorized use of the HEALTH MATE Trademarks, HEALTH MATE Logo, and Health Mate trade, domain, and corporate names in connection with the marketing and sale of purported "Health Mate" products is likely to cause confusion, mistake, and deception as to whether Defendants' products are approved of, sponsored by, or somehow affiliated with Plaintiff.

217.   Defendants' actions have been knowing, deliberate, willful, and malicious.

218.   Plaintiff is informed and believes and thereon alleges that Defendants' wrongful acts have permitted and will continue to permit Defendants to receive substantial revenue and profits from their past and ongoing unfair competition and trademark infringement, based upon the strength of Plaintiff's reputation and the substantial goodwill associated with the HEALTH MATE Trademarks and HEALTH MATE Logo.

219.   Defendants' actions have caused Plaintiff damages in an amount to be determined at trial.

220.   Plaintiff has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts described herein, including without limitation, use of the HEALTH MATE Trademarks and HEALTH MATE Logo, Plaintiff will continue to suffer irreparable harm.  Accordingly, Plaintiff is entitled to an injunction restraining Defendants and their agents and employees, and all persons acting in concert with them, from engaging in any further such acts of trademark infringement in violation of California common law.

///

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## EIGHTH CLAIM FOR RELIEF
### MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA'S UNIFORM TRADE SECRETS ACT
### [Cal. Civ. Code §§ 3426 *et seq.*]
### (Against Defendant Gordon)

221.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

222.   Defendants have misappropriated Plaintiff's trade secrets in violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1.

223.   Defendants misappropriated Plaintiff's trade secrets and used the HEALTH MATE Trademarks and Logo, and the Health Mate trade, domain, and corporate names, to make sales Defendants otherwise would not have consummated, thereby also misappropriating Plaintiff's customers and business.

224.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and are entitled to monetary damages in an amount not yet determined, including damages for actual loss caused by Defendants' misappropriation of Plaintiff's trade secrets and damages for any unjust enrichment caused by Defendants' misappropriation of Plaintiff's trade secrets that is not taken into account in computing damages for actual loss.

225.   Defendants willfully and maliciously misappropriated Plaintiff's trade secrets, justifying both an award of exemplary damages in an amount not more than two times the amount of the monetary damages and an award of reasonable attorneys' fees and costs.

226.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

# NINTH CLAIM FOR RELIEF
## UNFAIR COMPETITION
### [Cal. Bus. & Prof. Code §§ 17200 *et seq.*]
### (Against All Defendants)

227.   Plaintiff incorporates by reference and realleges each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

228.   The above acts and practices of Defendants are likely to mislead the general public, and thereby constitute unlawful, unfair and fraudulent business acts and practices and unfair, deceptive, untrue and misleading advertising in violation of California Business and Professions Code §§ 17200 *et seq.*

229.   Defendants' conduct caused injury in fact to Plaintiff, resulting in loss of money or property.

230.   Plaintiff is entitled to relief against Defendants, including full restitution and/or disgorgement of all profits and benefits obtained by Defendants.

231.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

232.   Defendants should be required to restore to Plaintiff any and all of Plaintiff's confidential information and assets, and any other information belonging to Plaintiff, in Defendants' possession, custody or control.  Plaintiff also seeks injunctive relief to stop Defendants from unfairly soliciting Plaintiff's current and potential customers utilizing their confidential information.  Plaintiff is entitled to a preliminary and permanent injunction against Defendants as prayed for herein.

///

///

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1.      For entry of judgment in favor of Plaintiff and against Defendants, and each of them, on each of Plaintiff's claims for relief alleged in this Complaint.

2.      For entry of a preliminary and permanent injunction restraining and enjoining Defendants, and each of them, and their officers, agents, servants, employees, representatives, associates, related corporate entities, owners, and operators, and/or all persons acting for, on behalf of, or in concert or cooperation with any of them:

a.      From any and all use of Plaintiff's HEALTH MATE Trademarks and/or Plaintiff's HEALTH MATE Logo, including without limitation, the use of "HEALTH MATE REPLACEMENT PARTS" or any other confusingly similar combination that includes the words "HEALTH MATE."

b.      From further acts of infringement of the trademarks at issue in this litigation, including by inducing or contributing third parties to infringe.

c.      From any and all use of the "Health Mate" trade name or corporate name, including without limitation the use of "Health Mate Fulfillment," "Health Mate Sauna," "Health Mate Sauna Fulfillment," "Health Mate Wellness," "Health Mate Infrared Sauna," "HM Corporate Sales," or any other confusingly similar combination that includes the words "Health Mate" or the letters "HM."

d.      From further acts of infringement of the Health Mate trade, domain, and corporate names at issue in this litigation, including by inducing or contributing third parties to infringe.

e.      From assigning, transferring or otherwise hypothecating the healtmateparts.com domain name to anyone other than to Plaintiff.

f.      From registering any domain name that includes "Health Mate" or any confusingly similar combination of words.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

g.      From further acts of cyberpiracy at issue in this litigation, including by inducing or contributing third parties to commit cyberpiracy.

h.      From assigning, transferring or otherwise hypothecating the "healthmatesaunas@gmail.com" email account to anyone other than to Plaintiff.

i.      From assigning, transferring or otherwise hypothecating the "Healthmatesaunaoffical@gmail.com" email account to anyone other than to Plaintiff.

j.      From directly or indirectly accessing, using, transferring, transmitting, assigning, disclosing, or making available to any person or entity other than Plaintiff, any of Plaintiff's confidential, proprietary, or trade secret documents, data or information, including but not limited to the information contained in the customer resource management database known as Pipedrive.

k.      From further acts of misappropriation of trade secrets at issue in this litigation, including the use or retention of any of Plaintiff's confidential and trade secret information remaining in the possession, custody, or control of Defendants, and each of them, in the solicitation of customers or potential customers for the sale of any products.

l.      From further acts of unfair competition and/or false advertising against Plaintiff.

3.      For entry of a preliminary and permanent injunction requiring Defendants, and each of them, and their officers, agents, servants, employees, representatives, associates, related corporate entities, owners, and operators, and/or all persons acting for, on behalf of, or in concert or cooperation with any of them to:

a.      Forthwith take all necessary steps and actions to assist the registrar in transferring the "healtmateparts.com" domain name to Plaintiff.

b.      Forthwith instruct any print directory, Internet directory, or website, including but not limited to You Tube, carrying or displaying the Health

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Mate trade name, the HEALTH MATE Trademarks, and/or the HEALTH MATE Logo or any other confusingly similar combination that includes the words "Health Mate," either alone or in combination with other words or symbols, to cease carrying or displaying such marks and/or trade name in connection with the sale, offering for sale, distribution, or advertising of sauna and sauna-related products by Defendants.

c.      Forthwith transfer any and all website content associated with the "healtmateparts.com" domain name to Plaintiff.

d.      Forthwith take all necessary steps and actions to transfer the "healthmatesaunas@gmail.com" email account to Plaintiff.

e.      Not alter, modify, forward, or delete any email stored anywhere in the "healthmatesaunas@gmail.com" email account, prior to the transfer of that account to Plaintiff.

f.      Forthwith take all necessary steps and actions to transfer the "Healthmatesaunaoffical@gmail.com" email account to Plaintiff.

g.      Not alter, modify, forward, or delete  any email stored anywhere in the "Healthmatesaunaoffical@gmail.com" email account, prior to the transfer of that account to Plaintiff.

h.      Forthwith return to Plaintiff all copies of any of Plaintiff's confidential, proprietary, or trade secret documents, data or information, including but not limited to the information contained in the Customer Resource Management database known as Pipedrive, that is in the possession, custody, or control of either Defendant Gordon and/or Defendant Mason or either of their officers, agents, servants, employees, representatives, associates, related corporate entities, owners, and operators, and/or all persons acting for, on behalf of, or in concert or cooperation with any of them.

4.      For entry of an order that the domain registrar transfer the healtmateparts.com domain name to Plaintiff forthwith.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

5. For entry of an award of actual monetary damages in favor of Plaintiff against Defendants, and each of them, in an amount to be proven at trial.

6. For entry of an award of any other monetary damages in favor of Plaintiff against Defendants, obtained by Defendants as a result their unlawful conduct, including but not limited to any unjust enrichment or profits that are attributable to or caused by Defendants' misconduct and are not taken into account in computing Plaintiff's actual damages.

7. For entry of an order requiring Defendants, and each of them, to disgorge to Plaintiff the ill-gotten gains, profits, and benefits obtained by Defendants as a result of their wrongful conduct, and imposing a constructive trust in favor of Plaintiff for those sums.

8. For a determination that Defendants' acts of trademark infringement constitute cases of willful and exceptional infringement.

9. For entry of an award of maximum statutory damages available under the law to the extent Plaintiff elect statutory damages for any claim for relief.

10. For entry of an award of treble and/or enhanced damages to the fullest extent available under the law.

11. For entry of an award of punitive damages to the fullest extent available under the law.

12. For entry of an award of reasonable attorneys' fees and costs to the fullest extent available under the law.

13. For entry of an award of prejudgment interest and the costs of prosecuting these claims to the fullest extent available under the law.

///

///

///

///

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

14. For any additional injunctive, specific performance, and/or other provisional remedies, as appropriate.

15. For such other and further relief as the Court deems just and proper.

Dated: February 26, 2020                    Respectfully submitted,

                                            ANAND LAW GROUP, P.C.


                                            By:   /s/ Harvinder S. Anand
                                            HARVINDER S. ANAND
                                             Attorneys for Plaintiff
                                             Samick Music Corp.,
                                             dba "Health Mate"

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

## **DEMAND FOR JURY TRIAL**

Plaintiff Samick Music Corp., dba "Health Mate," hereby respectfully demands trial by jury on all issued raised herein so triable.

Dated: February 26, 2020                     Respectfully submitted,

ANAND LAW GROUP, P.C.


By:   /s/ Harvinder S. Anand
HARVINDER S. ANAND
 Attorneys for Plaintiff
 Samick Music Corp.,
 dba "Health Mate"

**COMPLAINT AND DEMAND FOR JURY TRIAL**