HARVINDER S. ANAND (SBN 243913)
ANAND LAW GROUP, P.C.
790 E. Colorado Boulevard, Suite 900
Pasadena, California 91101
Phone: (626) 239-7250
Fax: (626) 239-7150
Email: harv@anandlawgroup.com

Attorneys for Plaintiff
Samick Music Corp., dba "Health Mate"

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMICK MUSIC CORP., dba "HEALTH MATE," <br><br> Plaintiff, <br><br> v. <br><br> GARRETT GORDON, an individual; NAOMI MASON, a.k.a. "KALI MASON," an individual; and DOES 1-25, inclusive, <br><br> Defendants. | Case No.  8:20-cv-00395 GW (JDEx) <br><br> **DECLARATION OF COREY SMEE IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> Action Filed: February 26, 2020 |

-1-

## DECLARATION OF COREY SMEE

I, COREY SMEE, declare as follows:

1.      I write this declaration in support of the *Ex Parte* Application for Issuance of Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, filed by Samick Music Corp., doing business as "Health Mate" ("Health Mate" or "Samick").

2.      I make this declaration based on my personal knowledge, except as indicated upon information and belief, which I believe to be true.  If called to testify as a witness, I could and would testify competently to the facts stated herein.

3.      I have been employed by Samick and PLH Products, Inc. ("PLH") (discussed in paragraph 4) for approximately six years.  I currently hold the position of Supervisor.  My responsibilities include Sales, Customer Service, and Marketing.  Through my experience with Health Mate, I know the information contained in this declaration.

**A.      Health Mate's History, Business and Valuable Intellectual Property.**

4.      Samick is a California corporation.  It has offices at 6655 Knott Avenue, Buena Park, CA 90620, and in Gallatin, Tennessee.  In October 2018, Samick acquired the assets of PLH, including its business operations, the right to use the "Health Mate" trade name, the trademarks that are at issue in this case, and all the goodwill associated with PLH's business and trademarks.  PLH, which was founded in 1979, had used the trade name "Health Mate" extensively and had used the HEALTH MATE trademarks since March 1993.  All references to Health Mate's history, its business operations, its goodwill, and its ownership and use of the HEALTH MATE trademarks include PLH's history, business operations, and goodwill, and PLH's ownership and use of those trademarks, which were acquired and inherited by Samick.  I have worked in Samick's and PLH's Buena Park office

since being hired.

     5.     Samick manufactures and sells infra-red saunas to consumers throughout the United States, Europe, and Asia.

     6.     Health Mate has been selling various types of saunas since 1979, making it a leader in the sauna industry.  Health Mate also has been either providing replacement parts to customers under warranty or selling replacement parts for its saunas since 1979.

     7.     As a company that depends both upon the quality of its products and the reliability of its brand, Health Mate has incurred costs to secure and protect its intellectual property interests.

     8.     Among other efforts, Health Mate has filed federal trademark applications to protect both the "HEALTH MATE" trademark and logo in connection with the marketing and sale of saunas and other sauna-related products. Plaintiff owns the following live federal trademarks, which are registered with the United States Patent and Trademark Office ("USPTO"):

| Mark | Word/Design Mark | USPTO Reg. No. & Date | Services |
|------|------------------|-----------------------|----------|
| HEALTH MATE | "HEALTH MATE" | <u>No</u>: 2167332 <br> <u>Date</u>: 6/23/1998 | <u>Class 11</u>: Saunas, namely, infra-red sauna, steam sauna, and dry sauna for heating purposes. |
| TYPED DRAWING | "HEALTH MATE" | <u>No</u>: 2167330 <br> <u>Date</u>: 6/23/1998 | <u>Class 11</u>: Saunas, namely, infra-red sauna, |

-3-

| Mark | Word/Design Mark | USPTO Reg. No. & Date | Services |
|---|---|---|---|
| | | | steam sauna, and dry sauna for heating purposes. |
|  | DESIGN ONLY | <u>No</u>: 5745071<br><u>Date</u>: 5/17/2019 | <u>Class 11</u>: Saunas; infra-red saunas; dry saunas for heating purposes. |
|  | DESIGN PLUS "HEALTH MATE" | <u>No</u>: 5980703<br><u>Date</u>: 2/11/2020 | <u>Class 11</u>: Saunas; infra-red saunas; dry saunas for heating purposes.<br><br><u>Class 24</u>: Towels; bath towels; towels for use in saunas.<br><br><u>Class 25</u>: Robes; clothing, namely, bath robes for use in saunas. |

-4-

9. True and correct printouts of the four active registrations set forth in the above table, from the USPTO's website, are attached hereto as **Exhibits 1-4** (collectively, "HEALTH MATE Trademarks" or "Trademarks").

10. In various forms, Health Mate has been using the distinctive "HEALTH MATE" Trademark in the sauna industry since March 1993, *i.e.* for almost 27 years.

11. Plaintiff also has been using the following distinctive "HEALTH MATE" logo (the "HEALTH MATE Logo" or "Logo") in the sauna industry since March 2015:

| **HEALTH MATE Logo** |
|---|
|  |

12. The HEALTH MATE Logo consists of the HEALTH MATE Trademark (*i.e.*, the words "HEALTH MATE") and "a lachrymiform shape trisected by two asymmetrical vertical swirls." (*See* Exh. 3.) Plaintiff has used a distinctive red color with the HEALTH MATE Logo since March 2015.

13. The HEALTH MATE Trademark and HEALTH MATE Logo are strong and distinctive when used in connection with the marketing and sale of saunas and sauna-related products, such as towels and robes for use with saunas and foot saunas.

///

14.     As a result of Plaintiff's exclusive and substantial use of the HEALTH MATE Trademarks for almost 27 years and its exclusive and substantial use of the Logo for approximately five years, both the Trademark and Logo have come to uniquely distinguish Health Mate's products from those offered by its competitors.

15.     In addition to using the trade name "Health Mate," Plaintiff also uses the trade names "Health Mate Sauna" and "Health Mate Wellness" in connection with the sale of its products.  The relevant public has come to exclusively associate these trade names with Plaintiff's saunas and sauna replacement parts.

16.     Health Mate's employees include the HEALTH MATE Logo in the signature line of their emails, including in communications with customers to help recipients associate the sender with Health Mate and the HEALTH MATE Logo, and to continue to strengthen and reinforce the Health Mate brand and HEALTH MATE Logo.

17.     Plaintiff has spent substantial sums to advertise and promote the HEALTH MATE Trademarks and Logo.  For instance, Plaintiff prominently displays the Logo and provides information about its products on the Internet via official websites located at www.healthmatesauna.com and www.healthmatewellness.com.

18.     Each press release issued by Health Mate is released with its Logo displayed across the newswire.  The Logo is also prominently displayed (in different colors) on Health Mate's LinkedIn page and also generally displayed on other social media sites used by the public to associate Health Mate with the products it offers.

19.     Plaintiff spends substantial sums each year to market its products under the HEALTH MATE Logo, including:

a.     Advertising at industry events each year, including the Consumer Electronics Show in Las Vegas.  At each such event, Health Mate

-6-

prominently displays its Logo, distributes marketing materials bearing the Logo, and employees in attendance wear lapel pins depicting the Logo.

      b.      Advertising in publications using the HEALTH MATE Logo to create awareness about its product offering. The creative element of the advertisement centers around the Logo, using it as the recognizable element of Health Mate's brand.

      c.      Health Mate's marketing mix also includes mailing informational brochures and product catalogues to individual households to help promote its brand.   Such marketing materials prominently display the Logo.

      d.      Health Mate uses its Logo to promote the brand through branded apparel, branded supplies, and branded technology accessories.

      e.      The Logo also is the symbol displayed to promote the Health Mate business and personal application available in the Google Play Store.  In this instance, the Logo is the main way the public can identify the app is associated with Health Mate.  The app has been a way for Health Mate to attract new customers to use its products.

      f.      The Logo is also prominently displayed on the log-in pages of Health Mate's online systems for its customers.  In these instances, the Logo is displayed to assure clients that they are accessing company-maintained technology.

      g.      Health Mate generates invoices with the Logo prominently featured on the top and it ships products with the Logo featured on the label.  In these instances, the Logo serves to associate the contents of the invoice and mailing with Health Mate and has been the main way one would associate all communications with Health Mate.

      20.      Health Mate has also used the Logo in recruiting efforts to attract new talent to the company.  The Logo is prominently displayed on Health Mate's job application platform to help prospective employees identify with the brand.

-7-

21.     Over the years, Plaintiff has expended substantial amounts of time, effort and money to ensure that the relevant public associates the HEALTH MATE Trademarks and the HEALTH MATE Logo with its products.  As a result, the Health Mate trade name, the HEALTH MATE Trademarks, and the HEALTH MATE Logo have achieved a reputation for excellence in the sauna industry.

22.     Plaintiff enjoys substantial demand and goodwill for the products it markets and sells under the HEALTH MATE Trademarks and Logo, which have enjoyed widespread success.  Accordingly, the Trademarks and Logo are significant assets of Plaintiff's business.

23.     The relevant public has come to exclusively associate the HEALTH MATE Trademarks and HEALTH MATE Logo with saunas and sauna-related products that originate from Plaintiff.

**B.     <u>Defendant Gordon Threatened to Harm Health Mate in July 2019, Immediately After the Company Terminated Him.</u>**

24.     Defendant Garret Gordon ("Defendant Gordon" or "Gordon") was in independent contractor of Health Mate for approximately five years prior to July 2019.[1]  Defendant Gordon provided marketing, website support, and customer support services to Health Mate.  Defendant Gordon worked out of Health Mate's office in Buena Park, California approximately one-to-two times per month. Beginning in 2017, I supervised Defendant Gordon while he worked with Health Mate.

25.     With the authorization of Health Mate, Defendant Gordon sold replacement parts to customers who owned Health Mate saunas that were no longer under product warranty.  Defendant Gordon purchased the Health Mate-certified replacement parts directly from Health Mate and he was authorized to

---

[1]     Defendant Gordon was an independent contractor of PLH until Samick acquired PLH's assets.

1  resell those parts to Health Mate's customers under the supervision of Health Mate.

2  26.  Defendant Naomi Mason, who uses the name "Kali Mason"

3  ("Defendant Mason" or "Mason"), worked with and for Defendant Gordon while

4  Defendant Gordon provided services to Health Mate.  Defendant Gordon

5  compensated Defendant Mason directly.  Health Mate did not ever make any

6  payment to Defendant Mason for services she provided to Defendant Gordon.

7  27.  In July 2019, Health Mate decided to have its own employees perform

8  the functions that Defendant Gordon had been performing as a consultant.

9  28.  On July 20, 2019, Andrew You, Health Mate's Chief Operating

10  Officer, called Defendant Gordon to inform him that all of his services to Health

11  Mate were terminated effective immediately.  I was present with Mr. You when he

12  called Gordon.

13  29.  Mr. You read a termination letter to Defendant Gordon.  Attached

14  hereto as **Exhibit 5** is a true and correct copy of the termination letter.

15  30.  During the telephone call on July 20, 2019, Mr. You asked Defendant

16  Gordon to return all access information for any and all accounts Defendant Gordon

17  had created for Health Mate, Health Mate Sauna or Health Mate Wellness.

18  Defendant Gordon never complied with this request.

19  31.  When Defendant Gordon learned that Health Mate no longer required

20  his services, Defendant Gordon responded by threatening Health Mate.  He stated:

21  a.  "I'm gonna turn everything the fuck off."

22  b.  "How about that?"

23  c.  "And how about this too?"

24  d.  "I'm gonna take down fucking Health Mate to the bones."

25  e.  "You realize how much keys [a manager under prior ownership

26  of the company] gave me to the company?  Do you understand?"

27  ///

28

-9-

f.     "Does fucking Samick understand?"

g.     "You guys understand?"  "You guys understand?"

h.     "You don't understand?"  "Ok."

i.     "Give me a week and let's see what fucking happens."

32.    Defendant Gordon hung up the phone on Mr. You after making the foregoing threats.

33.    Abe Lee, whom I supervise, sent Defendant Gordon a confirmatory termination letter after the July 20, 2019 telephone call.  (Exh. 5.)  Although the letter was sent to Defendant Gordon at the home address he had provided to Health Mate, it was returned undeliverable.

34.    While he was a consultant, Defendant Gordon controlled access information for, among other things, Health Mate's official websites (located at www.healthmatesauna.com and www.healthmatewellness.com).   Defendant Gordon also had access to Health Mate's landline telephone accounts as an authorized user.  Despite Mr. You's request on July 20, 2019, Defendant Gordon did not return access information for Plaintiff's official websites.   Rather, Plaintiff itself gained access to the websites by contacting third parties and proving that the accounts in fact belonged to Plaintiff.  Plaintiff also transferred its landline telephone accounts to a new service provider so that Defendant Gordon no longer would have access to them.  The previous provider would not remove Gordon from the accounts without his assent.

## C.    <u>Defendants Made Good on Gordon's Threats.</u>

35.    Since Defendant Gordon threatened Health Mate, it has experienced numerous problems.  Defendants have (a) stolen Health Mate's Trademarks, trade name, corporate name, and trade dress (*i.e.*, its packaging) and misappropriated Health Mate's business, including through the unauthorized sale of saunas and sauna parts under Health Mate's trade and corporate names; (b) misappropriated

-10-

and used trade secret information in Plaintiff's proprietary customer database to sell saunas under Health Mate's trade and corporate names; (c) initiated three attacks on Health Mate's official website; and (d) executed a coordinated a public campaign against Health Mate through the dissemination of false online negative reviews, with the dual goals of harming Health Mate's reputation while simultaneously causing Health Mate customers to purchase products directly from Defendants.

**D.** **Defendants Gordon and Mason Have Committed Trademark Infringement and Misappropriated Health Mate's Business.**

*1.* *Defendants' Misappropriation of Health Mate's Trade Secrets.*

36.     While serving as a consultant for Health Mate, Defendant Gordon acquired and set up Pipedrive, a comprehensive customer relationship management software. Health Mate used Pipedrive as its database for managing contacts with customers who required service, including customers who purchased replacement parts or received parts under warranty. Defendants Gordon and Mason had full access to Pipedrive while they worked with Health Mate.

37.     Pipedrive included, among other information, Health Mate's confidential customer names, addresses, telephone numbers, email addresses, and order histories for sauna replacement parts. At the time Defendant Gordon was terminated, Pipedrive included information for approximately two years of Health Mate's sales and for approximately 6,500 customers.

38.     The information in Pipedrive, which was password protected at all times, was and remains confidential and sensitive and constitutes Health Mate's trade secrets. It has not been disclosed publicly. Other than Health Mate employees, only Defendant Gordon and Defendant Mason had access to information in Pipedrive.

///

-11-

39.     Health Mate authorized Defendant Gordon and Defendant Mason to have access to its customer information in Pipedrive only while Defendant Gordon was a consultant for Health Mate.

40.     While serving as a consultant, Health Mate informed Defendant Gordon he must maintain the confidentiality of information in Pipedrive. Defendants Gordon and Mason also understood and knew that they were permitted to have access to Health Mate's information in Pipedrive only while they had a business relationship Health Mate.

41.     Information in Pipedrive, including regarding Health Mate's customer needs and preferences, has significant economic value because it allows anyone who otherwise would not have this information to gain a distinct advantage through familiarity with approximately 6,500 of Plaintiff's customers in the sauna industry.  Health Mate used extensive efforts and incurred expenses to develop its trade secret information.

42.     On July 20, 2019, Health Mate notified Defendant Gordon that his services to Health Mate were terminated effective immediately.  After receiving such notice, Defendants Gordon and Mason knew that Health Mate did not authorize Defendants to use any of Health Mate's trade secrets, including its secret customer information in Pipedrive.

43.     Despite Health Mate's request, Defendant Gordon did not return all access information for any and all accounts Defendant Gordon had created for Health Mate, Health Mate Sauna or Health Mate Wellness, including for Pipedrive.

44.     As of today, Defendants Gordon and Mason continue to retain all of the trade secrets stored in Pipedrive at the time of Defendant Gordon was terminated.

///

///

-12-

2.   *Defendants Have Used the Information in Pipedrive to Sell Saunas Under Health Mate's Brand and Trade Name.*

45.   While serving as a consultant for Health Mate, Gordon registered the email address "healthmatesaunas@gmail.com" ("Infringing Email Address No. 1"), which incorporates the HEALTH MATE Trademark and its trade name.

46.   While serving as a consultant for Health Mate, Gordon also registered the email address "Healthmatesaunaoffical@gmail.com" ("Infringing Email Address No. 2"), which also incorporates the HEALTH MATE Trademark and its trade name, and purports to be Health Mate Sauna's "official" email address.

47.   After being terminated on July 20, 2019, Gordon and Mason also knew that Health Mate did not authorize Defendants to use the HEALTH MATE Trademark, Health Mate's trade name or corporate name, or any variation of the foregoing, for any reason, including in Infringing Email Address 1 No. or Infringing Email Address No. 2.

48.   Plaintiff has evidence that Defendants Gordon and Mason have engaged in unfair competition and illegally derived profits by misappropriating and using Health Mate's trade secrets in Pipedrive and selling saunas to Health Mate's customers under the false guise of being affiliated or associated with Health Mate.

49.   For example, on November 18, 2019, Defendant Gordon made a sale in the amount of $3,995 by charging a customer's Visa credit card account ending in 5513.  The sale was made under the name "Health Mate Infrared Sauna" and/or "HM Corporate Sales."  "Garrett Gordon" was reported as the "Cashier" for the sale.  As discussed below, Defendant Gordon used an email address incorporating Health Mate's trade name (*i.e.*, which is very similar to Infringing Email Address No. 1) to process the credit card transaction.  (*See* Exh. 6.)

///

///

-13-

50.     Between November 25, 2019 and February 2, 2020, Defendant Gordon made eight more credit card sales in this same way.  Specifically, all of the sales were made under the name "Health Mate Infrared Sauna" and/or "HM Corporate Sales."  "Garrett Gordon" was reported as the "Cashier" for each sale and Defendant Gordon made each sale by using an email address very similar to Infringing Email Address No. 1.  Defendant Gordon made the following eight additional sales:

a.     On November 25, 2019, a sale in the amount of $895 by charging a Visa credit card account ending in 3827.  (*See* Exh. 7.)   A credit of $200 for this sale was issued on January 13, 2020.  (*See* Exh. 8.)

b.     On November 25, 2019, a second sale in the amount of $2,800 by charging a Visa credit card account ending in 3434.  (*See* Exh. 9.)

c.     On November 25, 2019, a third sale in the amount of $3,695 by charging a Mastercard credit card account ending in 9300.  (*See* Exh. 10.)

d.     On November 25, 2019, a fourth sale in the amount of $3,695 by charging a Discover credit card account ending in 6025.  (*See* Exh. 11.)

e.     On December 8, 2019, a sale in the amount of $3,895 by charging an American Express credit card account ending in 7170.  (*See* Exh. 12.)

f.     On December 9, 2019, a sale in the amount of $3,995 by charging a Discover credit card account ending in 8324.  (*See* Exh. 13.)

g.     On December 12, 2019, a sale in the amount of $3,895 by charging a Visa credit card account ending in 6955.  (*See* Exh. 14.)

h.     On February 2, 2020, a sale in the amount of $4,395 by charging a Visa credit card account ending in 0739.  (*See* Exh. 37.)

51.     I obtained all of the above-described credit card transaction information and credit card receipts through links in emails sent by Clover, a credit card processing company, to the following email address:

-14-

"healthmatesauna@gmail.com."  Emails sent to that address were received by Jordan Jacob, a salesperson employed by Health Mate in Buena Park, California, and Mr. Jacob forwarded the emails to me.  Mr. Jacob is permitted to use the foregoing email address while employed by Health Mate.

52.     When Defendant Gordon processed the credit card transactions described in paragraphs 49 and 50, he had emails sent to "healthmatesauna@gmail.com" instead of "healthmatesaunas@gmail.com," *i.e.*, Infringing Email Address No. 1.  The email address to which the transaction receipts were sent omits the "s" after "healthmatesauna."  Mr. Jacob received the emails because Defendant Gordon apparently omitted the "s" in the email account he used to receive receipts of the credit card transactions he executed.

53.     Attached hereto as **Exhibits 6-14 and 37** are true and correct copies of the emails from Mr. Jacob (with attorney-client communications redacted) and the credit card transaction receipts that I printed by clicking on the links in the emails, for each of the nine sales and one credit described above.

54.     Based on the high dollar amount of the above sales, eight of the transactions are strongly believed to involve the sale of a sauna and one (for $895 on November 25, 2019) is believed to be for the sale of one or more replacement parts.

55.     Each of the transaction receipts attached at **Exhibits 6-14 and 37** states the seller was "Health Mate Infrared Sauna" and/or "HM Corporate Sales." Because Defendant Gordon sold saunas to customers under the Health Mate name, the buyers' credit card statements also would reflect "Health Mate Infrared Sauna" or "HM Corporate Sales" as the merchant who sold the products they purchased. The email receipts were sent by Clover, a credit card processing company, and the same seller information reported in the emails would appear on the buyers' credit card statements.

-15-

56.     Based on Defendant Gordon's unauthorized use of Health Mate's trade name to sell saunas and parts to customers, it is apparent that after being terminated, Defendant Gordon made the sales described in Paragraphs 49 and 50 by improperly using Health Mate's trade secrets and customer information, including information stored in Pipedrive, to contact and solicit customers. Defendant Gordon would not have identified the seller as "Health Mate Infrared Sauna" and/or "HM Corporate Sales" in credit card transactions unless he had also previously identified himself to the customers as being affiliated or associated with Health Mate while trying to consummate the sales.  In so doing, Defendant Gordon created the false and fraudulent impression to customers that Defendants have some affiliation or relationship with Health Mate.

57.     Health Mate strongly suspects that Defendants have been using Infringing Email Address No. 1 and/or Infringing Email Address No. 2 to communicate with and solicit customers.  Indeed, we are aware of two instances, after Gordon was terminated, of Defendant Mason contacting a former Health Mate customer to sell purported Health Mate replacement parts:

a.     On August 28, 2019, Mason exchanged emails with a former Health Mate customer to sell a "power supply and or controller."  This contact occurred after Mason had sent an email to the customer on June 24, 2019 (while Gordon was a consultant for Health Mate) to advertise a "Health Mate 4th of July Special."  (*See infra* ¶ 74(a) & Exh. 21.)  The customer ordered the foregoing parts from Defendants, but they did not deliver all the parts as promised.  The customer then contacted Health Mate to complain, stating he believed he had purchased parts from Health Mate directly.

b.     In August 2019, Mason solicited a second customer for the sale of Health Mate "replacement parts."  Once again, the customer ordered the parts, but Defendants did not deliver them as they had promised.  And once again, the

-16-

customer contacted us to complain and explained that he believed he had purchased parts from Health Mate directly.  In an email to Health Mate, the customer explained: "In August [2019] I received an email from Kali asking me if I still needed the parts as she was offering them with a discount so the total was $380.00.  At this point, our sauna control panel was becoming unusable, so I went ahead and ordered the parts.  I received the below order confirmation from healthmate [sic]."  (*See infra* ¶ 73(e) & Exh. 20 (quoted statement included in Oct. 18, 2019 email from C.W. to Ms. Siglar).)

58.     Based on the foregoing facts, Health Mate strongly suspects that Defendants have been soliciting Health Mate customers to purchase saunas as well as purported Health Mate replacement parts.  We also strongly suspect that Defendants have been using Infringing Email Address No. 1 and/or Infringing Email Address No. 2 to communicate with and solicit customers because Defendants likely would send emails from an address that contains "Health Mate" in the name to make it appear to customers they are dealing with Health Mate directly, not someone unaffiliated with the company.  This is the reason that Gordon started using Infringing Email Address No. 1 and Infringing Email Address No. 2 in the first place.

59.     Defendants made additional sales of saunas in the same way as the sales set forth in paragraphs 49 and 50.  In addition to the emails described above, Mr. Jacob received similar emails from Clover prior to November 18, 2019, which he deleted because he incorrectly believed those were sales made by Health Mate, not someone no longer affiliated with the company.  In his November 18, 2019 email to me (*i.e.,* the first sale discussed above), Mr. Jacob sated, "I get these from time to time – if you click on Full Transaction Receipt – it says it's from Garrett Gordon."  (*See* Exh. 6.)

-17-

3.   _Defendants Also Used Health Mate's Trademarks and Logo to Sell Parts on a Competing Website._

60.   Gordon owns and controls the domain "healthmateparts.com" (the "Infringing Domain") and operates the website www.healthmateparts.com (the "Infringing Website").[2]  Prior to terminating Defendant Gordon in July 2019, Health Mate authorized him to sell its company-certified replacement parts through its website located at www.healthmatesauna.com, not the Infringing Website.

61.   After being terminated on July 20, 2019, Defendants Gordon and Mason knew that Health Mate did not authorize Defendants to use the HEALTH MATE Trademark, the HEALTH MATE Logo, the Health Mate trade name, or any variation of the foregoing, to sell any products, including through the Infringing Website.

62.   Defendants nonetheless have (a) incorporated the HEALTH MATE Trademark and Health Mate trade name into the Infringing Domain and Infringing Website; (b) used and included the HEALTH MATE Trademark, Health Mate trade name, and the HEALTH MATE Logo in connection with the advertisement and sale of products, including through the Infringing Website; and (c) used and included the HEALTH MATE Trademark, Health Mate trade name, and the HEALTH MATE Logo on packaging of products they sold.

63.   After being terminated, Defendants Gordon and Mason sold purported replacement parts for Health Mate products through the Infringing Website, which they actively operated through on or about October 18, 2019.  I reviewed the content on the Infringing Website prior to October 18, 2019, when Defendant Gordon replaced the content with a single page stating the site is "Under Construction."

---

[2]   Gordon registered the Infringing Domain before being terminated.

-18-

64.     Without Health Mate's permission or authorization, Defendants modified Health Mate's actual Trademark and used Health Mate's trade name in advertising on the Infringing Website, as shown below:



65.     The infringing trademark modified Health Mate's genuine Trademark to add the words "Replacement Parts," but otherwise used the protected Trademark (*i.e.*, the word mark "HEALTH MATE"), including the same font and the same distinctive red color used in the Logo (the "Infringing Trademark").  Health Mate does not use "Replacement Parts" in conjunction with its Logo or in the sale of its company-certified replacement parts.

66.     The Infringing Website's homepage displayed an approximately 6-minute video in which Defendant Gordon made false and fraudulent statements about Health Mate.  Among other false statements, Defendant Gordon represented in the video that he had manufactured an "upgraded" version of Health Mate's power supply box and that Defendant Gordon's parts were superior to Health Mate's genuine replacement parts.

67.     Defendant Gordon's claim that he had manufactured superior replacement parts for Health Mate saunas is false.  In truth and in fact, Defendant Gordon sold genuine Health Mate replacement parts through the Infringing Website to the same customers who otherwise would have purchase those products directly from Health Mate:

a.     The purportedly "upgraded" power box in Defendant Gordon's video appeared visually to be identical to Health Mate's own power supply box in that the purported replacement box was the exact same color as Health Mate's

-19-

power supply box and the purported replacement box had the same green sticker from Health Mate's factory and the same red cap included on every Health Mate power supply box.

b.     Prior to being terminated on July 20, 2019, Defendant Gordon purchased Health Mate-certified power supply boxes, which Defendant Gordon then was authorized to resell to customers.  It appears that Defendants sold to Heath Mate customers who visited the Infringing Website the very same Mate-certified power supply boxes that Defendant Gordon had purchased from Health Mate.

c.     As set forth in paragraph 73(a) below, Defendants began selling products through the Infringing Website by no later than September 10, 2019. Defendant Gordon did not have sufficient time after his termination on July 20, 2019, to manufacture a purportedly "upgraded" power box, which would have required finding a manufacturer and complying with countless laws and regulations in the United States governing the manufacture and distribution of products throughout the country.

d.     Defendant Gordon was passing off to customers the Health Mate-certified power supply boxes he purchased from Health Mate as "upgraded" parts that Defendant Gordon falsely claimed to have manufactured himself.

68.     Defendant Gordon removed the false video from the Infringing Website when he replaced the content with the page stating the site is "Under Construction."  However, before the complaint was filed in this case, the same video continued to appear on You Tube and is available at: https://www.youtube.com/watch?v=bNDwdVOm2gI.  The following false claim appeared below the video: "Health Mate Parts can upgrade your sauna with new parts and US based technical support.  Don't rely on poor service, call the experts at www.healthmateparts.com."  Gordon made the video "private" after the

-20-

complaint was filed.

69. Accordingly, the harm to Health Mate from the false video and the Infringing Website is ongoing and continuous.

4. *Defendants Misappropriated Health Mate's Customers and Business.*

70. Regardless of whether Defendant Gordon was selling Health Mate company-certified power supply boxes, users who encountered the Infringing Website were likely to believe incorrectly that it was affiliated with or is a part of Health Mate, or that Health Mate approved of or had a business relationship with the Infringing Website.

71. This confusion, mistake, and deception regarding the source of the Defendants' products and regarding any perceived affiliation with Defendants resulted in Defendants diverting Health Mate's customers; misappropriating Health Mate's business; significantly harming Health Mate's reputation, goodwill, Trademarks, and Logo; and diluting Health Mate's Trademarks and Logo.

72. The harm to Health Mate was exacerbated significantly because Defendants did not deliver parts to numerous customers who ordered from Defendants, including but not limited customers who found Defendants through the Infringing Website. Defendants also did not respond to other customers' inquiries after they placed orders with Defendants.

73. Numerous customers called either me or Crystal Siglar, a customer service representative in Buena Park, California who reports to me, to complain about orders they placed with Defendants, including through the Infringing Website. Each customer would inform us of an order he/she had placed and inquire why it had not been fulfilled as promised. When we did not find the customer's order in our records, the customer would send us the order confirmation they had received from Defendants. We informed each customer that Health Mate is not affiliated with Health Mate Parts. Each of the customers responded by

-21-

informing us that they believed they were purchasing replacement parts directly through Health Mate.  The following customers called either me or Ms. Siglar to complain about orders placed with Defendants through the Infringing Website:

a. On September 24, 2019, customer W.J. contacted us to complain about not receiving an order placed through the Infringing Website on September 10, 2019.  (*See* Exh. 15.)

b. On September 24, 2019, customer D.F. contacted us to complain about Defendants not responding to inquiries about parts ordered through the Infringing Website on September 4, 2019.  (*See* Exhs. 16 & 17.)

c. On October 9, 2019, customer G.E. contacted us to complain about not receiving an order placed through the Infringing Website on September 5, 2019.  (*See* Exh. 18.)

d. On October 16, 2019, customer J.H. contacted us to complain about not receiving an order placed through the Infringing Website on September 18, 2019.  (*See* Exh. 19.)

e. On October 18, 2019, customer C.W. contacted us to complain about not receiving an order placed through the Infringing Website on October 5, 2019.  (*See* Exh. 20.)

74. Other customers also called us to complain about products they purchased from Defendants, even though they had not ordered through the Infringing Website:

a. On December 3, 2019, customer R.B. contacted us to complain about not receiving all parts he had ordered from Defendant Mason on November 13, 2019.  Customer R.B. purchased the replacement parts for his Health Mate sauna in response to an email R.B. had received in or about June 2019 from Defendant Mason offering discounted Health Mate replacement parts.  (*See* Exh. 21.)  Before making the sale to R.B. on November 13, 2019, Defendant Mason

-22-

exchanged a text message with R.B. in which Defendant Mason identified herself as "Kali Health Mate" and listed her email address as "kali@healthmateparts.com."  (*See* Exh. 22.)

       b.    On December 11, 2019, customer J.M. contacted us to complain about not receiving all parts he had ordered from Defendants Gordon and Mason on December 5, 2019.  (*See* Exh. 23.)

       c.    On January 2, 2020, customer C. Z. contacted Health Mate to complain about not receiving a part she had ordered from Defendants on December 17, 2019.  (*See* Exh. 24.)

    75.    The customers discussed above in paragraphs 73 and 74[3] told either me or Ms. Siglar that they believed that had purchased their replacement parts from Health Mate, not some unaffiliated company.  For example, customer G.E. stated in email that he was "confuse[d] . . . whom I . . . paid [for] the power unit supply."  (*See* Exh. 18.)  The customer believed he was dealing with Health Mate directly because he ordered from "Health Mate Parts."

    76.    Similarly, customer C.W. stated he believed he was dealing with Health Mate because he "received [an] order confirmation from healthmate [sic]," which had actually been sent by Defendants for a sale initiated through the Infringing Website.  (*See* Exh. 20.)

    77.    A third customer, C.Z., stated that she believed she had "[p]urchased through health mate directly."  (*See* Exh. 24.)

    78.    Indeed, several of the customers told me that they were "shocked" to learn that they had purchased products from a company not affiliated with Health Mate, when they were informed that "Health Mate Parts" has no connection with Health Mate.  To rectify the problems Defendants created, Health Mate shipped

---

[3]    Attached hereto as **Exhibits 15-24** are true and correct redacted copies of emails we received from the customers discussed in paragraphs 73 and 74.

products from Buena Park, California to some of the customers who complained about Defendants and assisted other customers who had installation issues with products purchased from Defendants.

5.   *Defendants Misappropriated Health Mate's Trademark and Logo in Invoices.*

79.   Each of the customers described above also were misled into believing they were dealing directly with Health Mate because, in addition to the false impression and confusion created by the Infringing Website, Defendants took additional steps that caused customers to believe they were purchasing directly from Health Mate.

80.   For example, Defendants used a counterfeited version of Health Mate's Trademark and Logo and included Health Mate's actual business address and actual customer service telephone number in invoices they sent to customers who placed orders through the Infringing Website.  The top of Defendants' invoices included the following:



81.   Except for adding the words "Replacement Parts" and using a filled-in red background, Defendants used Health Mate's actual Logo:

///

-24-



82.     The red color used by Defendants in their logo (the "Counterfeit Mark" and "Counterfeit Logo") is identical to the red color used by Health Mate in its actual Logo.

83.     Customers also were deceived by Defendants because their invoices stated, "Thank you for being a loyal Health Mate Sauna customer," even though Defendants were not authorized to use Health Mate's trade name after they were terminated.  True and correct copies of Defendants' invoices to the customers described above (with their personal identification information redacted), which we received from the customers, are attached as **Exhibits 25-29**.

84.     After being terminated on July 20, 2019, Defendants Gordon and Mason were not authorized to use the name "Health Mate Fulfillment," which incorporated Health Mate's trade name, or to use or modify the Logo in any way. Nor did Health Mate authorize Defendants to use or modify its Logo for any purpose, including in the invoices Defendants sent to customers who placed orders through the Infringing Website.

85.     Furthermore, Health Mate did not authorize Defendant Gordon or Defendant Mason to use its business address or customer service telephone number for any reason whatsoever.

-25-

6.  *Defendants Purported to Use Health Mate's Email Address in Communications with Customers.*

86.     Defendants also misled customers by sending "confirmatory" emails to customers who placed orders through the Infringing Website or with Defendants directly.  Defendants sent those emails purportedly from the email address "Health Mate Fulfillment <support@healthmatesauna.com>."

87.     True and correct copies of Defendants' emails to the eight customers described above (with their personal identification information redacted) are attached as **Exhibits 15-24**.

88.     One of Plaintiff's official websites is located at www.healthmatesauna.com.  Plaintiff controls all emails sent to or from email addresses associated with that domain, including the email address "support@healthmatesauna.com."

89.     Defendants' emails to customers, purporting to be sent from the email address "support@healthmatesauna.com," misled customers because (a) Plaintiff did not authorize Defendant Gordon, Defendant Mason, or anyone else to use any variation of Health Mate's trade name, including "Health Mate Fulfillment," to send emails to customers after July 20, 2019; and (b) Defendants had no authority to use or access the email address "support@healthmatesauna.com" after July 20, 2019.

90.     I asked Health Mate's Information Technology ("IT") Department to review records for the email address "support@healthmatesauna.com."  Health Mate's IT Department determined that emails purportedly sent by Defendants after July 20, 2019 from the address "support@healthmatesauna.com" were in fact not sent from that email address.

91.     Rather, Defendants must have sent emails from an unknown address but intentionally spoofed the "support@healthmatesauna.com" address to make

-26-

customers believe they were buying products directly from Health Mate. "Spoofing" an email address means to display a false email address in the "from" field to disguise the true and correct sender of the email.

92. Defendants also included Health Mate's business address and customer service telephone number in the "confirmatory" emails to customers, without Health Mate's permission. (*See* Exhs. 15-24.)

### 7. *Defendants Stole Health Mate's Trade Dress.*

93. To further mislead customers into believing the Infringing Website and Defendants were associated with Health Mate and that customers actually were purchasing products through Health Mate, Defendants also intentionally used the confusing and deceptive name "Health Mate Sauna Fulfillment" without authorization to make sales and distribute products. A true and correct redacted copy of Defendants' shipping label to customer D.F., described above in paragraph 73(b), is attached as **Exhibit 30**.

### 8. *Health Mate Was Harmed Significantly by the Infringing Website.*

94. Defendants and the Infringing Website exploited Health Mate's goodwill and business reputation by attracting users through their unauthorized use of Health Mate's trade name, Trademarks, and Logo and deceiving customers into believing they were dealing directly with Health Mate. The harm to Health has been compounded significantly by Defendants' failure to deliver products as promised to numerous customers, who believed they were dealing directly with Health Mate. The customers then called us to complain.

95. The Infringing Website's bare-bones layout and appearance diluted and tarnished Health Mate's Trademarks by negatively associating Health Mate with a low-quality website whose purpose was to divert Health Mate's business.

96. As noted above, I reviewed the content of the Infringing Website before October 18, 2019, including a video in which Defendant Gordon made

-27-

1    numerous statements about Health Mate.  Defendant Gordon also made other

2    materially false and disparaging statements about Health Mate and its employees

3    on the Infringing Website to bolster sales of purported replacement parts for Health

4    Mate products.

5        97.    For example, Defendant Gordon used the Infringing Website to tout

6    himself as the "manufacturer [of] upgraded Health Mate parts, engineered by USA

7    technicians" and to falsely inform the public that "Health Mate no longer has the

8    ability to give you the technical support you need or deserve to fix your sauna."

9    These two statements were false because in truth and fact (a) as explained above,

10   Defendants actually sold genuine Health Mate replacement parts that they passed

11   off as purportedly superior parts; and (b) Health Mate possessed the ability to and

12   in fact did provide technical support to customers who required repair of their

13   saunas.

14       98.    On or about October 18, 2019, I received a forwarded email that

15   Defendant Gordon sent to senior management of Samick.  Gordon apparently had

16   learned that Health Mate intended to file suit against him for many of the acts

17   described herein.  Apparently realizing that the content on the Infringing Website

18   was illegal, Defendant Gordon replaced all the false content with a single web page

19   that states the site is "Under Construction."

20       99.    I thereafter authorized Health Mate's attorneys to contact Defendants

21   Gordon and Mason to engage in settlement discussions.  Those discussions were

22   not successful.

23       100.   The Infringing Website continues to display a single "Under

24   Construction" page as of today.  That bare-bones layout and appearance continue

25   to dilute and tarnish Health Mate's Trademarks by negatively associating Health

26   Mate with a low-quality "website."

27   ///

28                                          -28-

101. Notwithstanding the changes made to the Infringing Website, Defendants have continued to use the HEALTH MATE Trademarks and Logo and the Health Mate trade and corporate names without authorization, as shown by, among other things, Defendants' sales to R.B. on November 13, 2019, their sale to J.M. on December 5, 2019, and their sale to C.Z. on December 17, 2019. (*See supra* ¶ 74.)

102. Defendants also continue to make the same false statements about Health Mate in the You Tube video available at: https://www.youtube.com/watch?v=bNDwdVOm2gI.

**E.**     **Defendants Attacked Health Mate's Website Three Times, Causing It to Crash on August 14, 2019.**

103. Defendant Gordon is strongly believed to have attacked one of Health Mate's websites on three occasions in the weeks following his July 20, 2019 threats against Health Mate.

104. Within a few days of July 20, 2019, Plaintiff experienced the first attack on its website (which is believed to be a hacking attempt), located at www.healthmatesauna.com. This attack was unsuccessful.

105. Plaintiff strongly suspects that on August 14, 2019, Defendant Gordon launched another attack on Health Mate's website at www.healthmatesauna.com. The second attack caused Health Mate's website to crash. None of Health Mate's customers or prospective customers were able to access its website for approximately 12 hours.

106. Websites Depot Inc., Plaintiff's website operator on August 14, 2019, assigned three coders to work on restoring Health Mate's hacked website, commencing work in the evening on August 14, 2019. The three coders modified the set-up of Health Mate's website, so that Defendant Gordon would be unable to access it again. Websites Depot restored Health Mate's website in the morning on

-29-

1    August 15, 2019.

2        107.   Within a couple of weeks of August 15, 2019, Defendant Gordon is

3    strongly suspected of again launching an attack on Health Mate's website located

4    at www.healthmatesauna.com.   That attack also was unsuccessful.

5        108.   Plaintiff believes that Defendant Gordon was responsible for the three

6    attacks on Health Mate's website based on, *inter alia*, the following facts:

7            a.     Prior to July 2019, Defendant Gordon was responsible for

8    maintaining Health Mate's website located at www.healthmatesauna.com.

9    Defendant Gordon had created the website and he was responsible for ensuring

10    that the website was active and operating properly.

11            b.     Accordingly, Defendant Gordon possessed confidential

12    information about the setup of the website, how it could be accessed, and its

13    vulnerabilities.  Defendant Gordon also was highly knowledgeably about

14    technology, which was one of the reasons Defendant Gordon was responsible for

15    creating and maintaining Health Mate's website.

16            c.     Defendant Gordon possessed both the technological ability and

17    the confidential knowledge and information about Health Mate's website to launch

18    the three attacks Health Mate experienced.

19            d.     Defendant Gordon attempted to intimidate Health Mate on July

20    20, 2019 by reminding it, "You realize how much keys [a manager under prior

21    ownership of the company] gave me to the company?  Do you understand?"

22    Defendant Gordon also threatened Health Mate, stating "I'm gonna turn everything

23    the fuck off" and "Give me a week and let's see what fucking happens," a few days

24    before the first website attack.  The three attacks all occurred within the span of a

25    few weeks of Defendant Gordon also threatening that he was "gonna take down

26    fucking Health Mate to the bones."

27    ///

28

-30-

e.      Prior to the first attack, Health Mate's websites had not been targeted for hacking.  Indeed, Health Mate had not previously experienced anything remotely like the three website attacks it experienced in the weeks after Defendant Gordon threatened Health Mate.

f.      No other person had threatened Health Mate at any time prior to the three website attacks.

**F.      Defendant Gordon Threatened to Create an "Entire Campaign" Against Websites Depot.**

109.   Defendant Gordon apparently believed— incorrectly—that Websites Depot, Health Mate's website company, had played a role in Health Mate's decision to terminate its relationship with Defendant Gordon.

110.   Accordingly, on August 8, 2019 Defendant Gordon also threatened Websites Depot by submitting the following "contact" form to Websites Depot through its own website (emphases added):

> Unethical business destroys business. I found out everything you lied to Health Mate about to get me fired.  Not only do I have email proof of this but **I plan on creating an entire campaign against you** so other potential customers know what's coming.  All legal because it's true.  You fabricated nonsense.  You will come clean with Health Mate or this process starts in 48 hours.  You think you're smart?  I'm smarter with more recourses [sic] . . . and I don't lose! Your scam will be exposed! **Try me**.  [Emphases added.]

111.   The foregoing "contact" form was submitted by "Garett" with the email address "Gordon@teamvalorem.com," which I know to be Defendant Gordon's email address.  Websites Depot did not respond to Defendant Gordon's threat.  A true and correct printout of Defendant Gordon's "contact" form to Websites Depot, which was forwarded to me, is attached hereto as **Exhibit 31.**

-31-

**G.      Defendants Posted Numerous False Negative Reviews About Health Mate to Harm Its Reputation.**

112.     Between July and October 2019, Defendants Gordon and Mason disseminated numerous false negative reviews about Health Mate.

*1.      Defendants Submitted a False Review on Yelp in the Name of a Fictitious "Customer."*

113.     Defendants started their negative public campaign by posting a false "review" about Health Mate four days after Defendant Gordon threatened Health Mate.  Plaintiff strongly suspects that on July 24, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Francine F.":

> It looks like Healthmate is VERY unstable now that they terminated the company that's been helping me fix my sauna. I had great confidence talking to Kali and Mark.  Now I'm extremely concerned owing [sic] this product.  For future repairs.  Before [sic] Kali I couldn't even get a replacement remote shipped to me.  Sauna's break and if the company can't keep a good efficient customer service department they are doomed.  Be very cautious with Healthmate.  Truly, disappointed in their new owners?  Or style of conducting business.

A true and correct printout of the above submission is attached hereto as **Exhibit 32**.

114.     The July 24, 2019 purported submission from "Francine F." was false because:

a.      Health Mate maintains a database containing, among other things, the name and address of all customers who have purchased a Health Mate sauna.  Health Mate's database contains no customer matching the first name "Francine" and the last name initial "F."  Nor does Health Mate's database contain any similar-named customer residing in "La Verne, CA," as the submission claims.

-32-

b.      The purported writer claims she "couldn't even get a replacement remote shipped to" her.  Health Mate keeps a log of all requests made by customers for replacement parts.  Health Mate has no record of any customer named "Francine F"—or any other customer—requesting a "replacement remote" on or about July 24, 2019.

c.      The absence of any record or evidence in Health Mate's records of a customer named "Francine F." in "La Verne, CA" or any record of the purported complaint posted in the Yelp submission establishes that no such customer actually exists.

115.    Defendants posted the July 24, 2019 submission on Yelp based on, *inter alia*, the following facts:

a.      Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

b.      Defendant Gordon is strongly suspected of directing the three attacks on Health Mate's website in the weeks following his threats.

c.      Defendant Gordon threatened to "create[e]an entire campaign against" Websites Depot.

d.      The absence of any record or evidence in Health Mate's records of a customer named "Francine F." in "La Verne, CA."

d.      Defendants fabricated the fictitious customer identity "Francine F." and submitted the false "review" to harm Health Mate, as Defendant Gordon warned he would four days earlier.

e.      In contrast, the submission makes a positive assertion about "Mark," the name Defendant Gordon used when dealing with customers as a consultant for Health Mate, and "Kali," who is Defendant Mason.  The apparent purpose of the false July 24, 2019 submission was to disparage Health Mate and bolster the reputations of Defendant Gordon and Defendant Mason.

-33-

1           f.      To create the false impression that other legitimate customers

2   agreed with "Francine F.," "Kasia G." voted for the July 24, 2019 submission on

3   Yelp.  I know from working with Defendant Gordon that "Kasia G." is Kasia

4   Gordon, Defendant Gordon 's wife.

5          2.    *Defendant Mason Submitted a False Review in Her Own Name on*

6               *October 2, 2019.*

7        116.   On October 2, 2019, Defendant Mason posted the following "review"

8   on Yelp:

9

10           I have an older sauna that was sold with a lifetime warranty. Not

11           only will they not honor it bit [sic] they cant [sic] even fix it.  Their

12           recourse of action was to sell me a new sauna at a "discounted price"

13           which when I looked into it with other members of their sales team

14           was not a discount at all.  Apparently, they are under new ownership

15           and dont [sic] care about their existing clients. Only the newer

16           clients.  I am purchasing a new sauna with a company that actually

17           is ethical and accountable to their customers.  Obviously Health

18           Mate no longer feels they have to have either qualities.  [sic]  I do

19           not want this company to contact me further as I do not trust their

20           word.  I just felt others should know that they will not be considered

21           [sic] new business after buy [sic] a sauna from them.

18

19   A true and correct printout of the above submission is attached hereto as **Exhibit**

20   **33**.

21        117.   The October 2, 2019 submission from Defendant Mason was false

22   because:

23           a.      Defendant Mason never contacted or spoke to any Health Mate

24   representative about repairing a sauna she owns.

25           b.      Defendant Mason never contacted or spoke to any Health

26   Mate representative to invoke a Health Mate product warranty for a sauna she

27   owns.

28                        -34-

c.      Health Mate never refused to honor a product warranty for a Health Mate sauna owned by Defendant Mason.

d.      Health Mate is in fact able to repair the saunas it sells.

e.      Health Mate never offered to sell Defendant Mason a new sauna, let alone a "discounted" sauna, in lieu of repairing a sauna she owns.

f.      The submission falsely alleges Health Mate is not an "ethical" company and that it is not "accountable" to customers.

118.   Apparently realizing that her October 2, 2019 submission was false, Defendant Mason deleted it by on or about October 3, 2019.

119.   Thereafter, Defendants reverted to their strategy of disseminating false statements about Health Mate on Yelp in the name of fictitious non-existent "customers."

3.      *Defendants Submitted a False Review in the Name of Fictitious "Debbie O." on October 3, 2019.*

120.   Plaintiff strongly suspects that on October 3, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Debbi O.":

> I have an older sauna that came with a lifetime warranty.  When it stopped working I called to have it repaired like it says Health Mate is required to do in our warranty contract.  Not only would they not honor the contract but told me they would sell me a sauna at a discounted price. After talking with some of their sales people [sic] I found out it was not a discount at all.  Apparently since coming under new ownership they no longer feel that they have to be accountable to their existing customers and it became clear that they only care about selling new saunas.  The ethical company this once was it is no longer. I have since purchased a new sauna from a company that actually believes in customer service and accountability.  It is sad that a corporation that used to be as good as this one has fallen so low as this.

-35-

A true and correct printout of the above submission is attached hereto as **Exhibit 34**.

121.   The October 3, 2019 purported submission from "Debbi O." was false because:

a.   Health Mate's database contains no customer matching the first name "Debbie" and the last name initial "O."  Nor does Health Mate's database contain any similar-named customer residing in "Thornton, CO," as the submission claims.

b.   Health Mate has no record of any customer named "Debbi O." contacting the company on or about October 3, 2019.

c.   The absence of any record or evidence in Health Mate's records of a customer named "Debbi O." in "Thornton, CO" or any record of the purported complaint posted in the Yelp submission establishes that no such customer exists.

d.   No Health Mate representative has offered to sell a customer a new sauna at a discounted price in lieu of repairing the customer's product under a valid unexpired warranty.

e.   The submission falsely alleges Health Mate "is no longer" an "ethical" company and that it does not "believe[] in customer service and accountability."

122.   Defendants posted the false October 3, 2019 submission on Yelp based on, *inter alia*, the following facts:

a.   Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

b.   Defendant Gordon is strongly suspected of directing the three attacks on Health Mate's website in the weeks following his threats.

c.   On July 24, 2019, Defendants submitted the false negative review on Yelp under the fictitious name "Francine F."

-36-

d.      On October 2, 2019, Defendant Mason submitted the false negative review on Yelp under her own name.  Knowing the submission was false, Defendant Mason subsequently deleted it.

e.      The submission on October 3, 2019 under the fictitious name "Debbi O." bears the following similarities to Defendant Mason's October 2, 2019 submission under her own name:

1.      Both submissions refer to an "older sauna" with a "lifetime warranty."

2.      Both submissions falsely claim Health Mate refused to honor its product warranty.

3.      Both submissions falsely claim Health Mate offered to sell the customer a new sauna at a discounted price in lieu of repairing the product under the warranty, and that the purported offer price was "not a discount at all."

4.      Both submissions falsely claim Health Mate cares only about its newer clients or customers.

5.      Both submissions falsely claim Health Mate is not an "ethical" company and that it is not "accountable" to customers.

f.      The absence of any record or evidence in Health Mate's records of a customer named "Debbi O." in "Thornton, CO" or any record of the purported complaint posted in the Yelp submission establishes that no such customer exists.

g.      Defendants fabricated the fictitious customer identity "Debbi O." and submitted the false "review" to harm Health Mate.

h.      To create the false impression that other legitimate customers agreed with "Debbie O," "Kasia G." voted for the October 3, 2019 submission on Yelp.  "Kasia G." is Kasia Gordon, Defendant Gordon's wife.

123.   On or about October 11, 2019, Yelp removed the October 3, 2019 submission, apparently because the submission was obviously false.

-37-

1
2

    *4.*    <u>*Defendants Submitted a False Review in the Name of Fictitious*</u>
    <u>*"Renee R." on October 7, 2019.*</u>

3
4
5

    124.    Plaintiff strongly suspects that on October 7, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Renee R.":

6
7
8
9
10
11
12
13
14
15
16
17
18
19

> I couldn't believe the amount of ignorance and bigotry from this company.  Crystal Siglar is the one who answers the phone.  She told me that a tech would only talk to me after I filled out an online support form.  She acted like a tech would call me per my request in the support form.  I did not receive a call from a tech.  I got an email giving me a diagnosis that no one had talked to me about from the same woman who answered the phone and said she was not a tech!  Well come to find out, there is NO tech team.  No one with the word "tech" anywhere near their professional title in this company.  Not only did Crystal lie to me about having technicians, she is completely incompetent when it comes to saunas and how they operate.  When I asked about the tech support they had only a few months prior, she said that HealthMate is under new ownership and decided to go a different direction with this department!  Who ever owns this company has now lost my business and all my referrals I sent to HealthMate.  Bad choice in recent changes!!!!!!  I'm going with a company with more knowledgeable and competent employees.

20
21

A true and correct printout of the above submission is attached hereto as **Exhibit 35**.

22
23

    125.    The October 7, 2019 purported submission from "Renee R." was false because:

24
25
26
27

    a.    Health Mate's database contains no customer matching the first name "Renee" and the last name initial "R."  Nor does Health Mate's database contain any similar-named customer residing in "Kingman, AZ," as the submission claims.

28

-38-

b.      Health Mate has no record of any customer named "Renee R." contacting the company on or about October 7, 2019.

c.      Health Mate Customer Service Representative Crystal Siglar did not, as the submission claims, speak to any customer named "Renee R." on or about October 7, 2019.

d.      Accordingly, "Renee R." in "Kingman, AZ" does not exist. Rather, Defendants fabricated the fictitious customer identity "Renee R." and submitted the false "review."

e.      The submission falsely alleges Health Mate is "ignoran[t]" and "bigot[ed]."

f.      Crystal Siglar did not tell any customer named "Renee R." on or about October 7, 2019 that "a tech would only talk to ["Renee R."] after [she] filled out an online support form.

g.      Health Mate did not send an email to any customer named "Renee R." on or about October 7, 2019 "giving ["Renee R."] a diagnosis" for a Health Mate sauna.

h.      The submission falsely alleges Health Mate does not have a "tech team," that "Crystal [Siglar] lie[d] to ["Renee R."], and that "Crystal [Siglar] is completely incompetent when it comes to saunas and how they operate."

i.      The submission falsely alleges Health Mate's employees are not "knowledgeable" or "competent."

126.    Defendants posted the October 7, 2019 submission on Yelp based on, *inter alia*, the following facts:

a.      Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

b.      Defendant Gordon is strongly suspected of directing the three attacks on Health Mate's website in the weeks following his threats.

-39-

c.      On July 24, 2019, Defendants submitted the false negative review on Yelp under the fictitious name "Francine F."

d.      On October 2, 2019, Defendant Mason submitted the false negative review on Yelp under her own name.  Knowing the submission was false, Defendant Mason subsequently deleted it.

e.      On October 3, 2019, Defendants posted the false "review" on Yelp under the name of purported customer "Debbi O."

f.      To create the false impression that other legitimate customers agreed with "Renee R," "Kasia G." voted for the false October 7, 2019 submission on Yelp.  "Kasia G." is Kasia Gordon, Defendant Gordon's wife.

g.      To further create the false impression that other legitimate customers agreed with "Renee R," "Naomi M." voted for the false October 7, 2019 submission on Yelp.  "Naomi M." is Defendant Mason.

h.      The October 7, 2019 submission makes a positive assertion about "the tech support [Health Mate] had only a few months prior," thereby referencing without name Defendant Gordon and Defendant Mason.  The purpose of the false October 7, 2019 submission was to disparage Health Mate and bolster the reputation of the Defendants.

127.   On or about October 11, 2019, Yelp removed the October 7, 2019 submission, apparently because the submission was obviously false.

5.      *Defendants Submitted a False Review in the Name of Fictitious "Jacob D." on October 8, 2019.*

128.   Plaintiff strongly suspects that on October 8, 2019, Defendants posted the following false "review" on Yelp under the name of purported customer "Jacob D.":

///

///

A [sic] 6 months ago I was working with a really knowledgeable lady in their tech department about fixing an older unit.  She was great but at the time I could not afford to fix it.  I called in over the course of the past week and no [sic] answered the call until my 5th day in a row calling [sic] she said he [sic] name was Crystal and she was not a tech and if I wanted to speak to one I had to fill out an on line [sic] ticket.  No tech called but I got and email telling be [sic] that I had to re submit [sic] all the information I provided on the ticket by this Crystal girl.  First I had asked for a call not an email.  Second I wanted to talk to the tech that had helped me previously but I was told that they had out sourced [sic] that company and no longer had a solution for me because they would not help me repair the one I have but would sell me a new unit instead of [sic] a discount price…..the discounted price was not very discounted.  I understand wanting to cut costs but this is just plain crazy.  My paperwork said lifetime warranty and obviously that's a joke but the company got rid of the techs that knew anything about these units.  Obviously they don't care about their customers that are in older [sic]. Just the new young ones who want to purchase newer saunas

A true and correct printout of the above submission is attached hereto as **Exhibit 36**.

129.   The October 8, 2019 purported submission from "Jacob D." was false because:

a.   Health Mate's database contains no customer matching the first name "Jacob" and the last name initial "D."  Nor does Health Mate's database contain any similar-named customer residing in "Pueblo, CO," as the submission claims.

b.   Health Mate has no record of any customer named "Jacob D." contacting the company on or about October 8, 2019.

c.   Health Mate Customer Service Representative Crystal Siglar, referenced in the submission as "Crystal," did not speak to any customer named "Jacob D." on or about October 8, 2019.

-41-

d.      Accordingly, "Jacob D." in "Pueblo, CO" does not exist. Rather, Defendants fabricated the fictitious customer identity "Jacob D." and submitted the false "review."

e.      Health Mate Customer Service Representative Crystal Siglar did not tell any customer named "Jacob D." on or about October 8, 2019 that he "had to fill out an on line [sic] ticket" to "speak to" a "tech."

f.      Health Mate did not send an email to any customer named "Jacob D." on or about October 8, 2019 sating he "had to re submit [sic] all the information [he] provided on the ticket."

g.      Health Mate did tell any customer named "Jacob D." on or about October 8, 2019 that the "company . . . no longer had a solution for me [or that it] would not help [the customer] repair" his sauna, or that Health Mate would instead "sell [him] a new unit . . . [at] a discount[ed] price."

h.      Health Mate cares about all of its customers and clients, not just "new young ones who want to purchase newer saunas," as this submission claimed.

130.   Defendants posted the October 8, 2019 submission on Yelp based on, *inter alia*, the following facts:

a.      Defendant Gordon made unambiguous threats on July 20, 2019 to harm Health Mate.

b.      Defendant Gordon is strongly suspected of directing the three attacks on Health Mate's website in the weeks following his threats.

c.      On July 24, 2019, Defendants submitted the false negative review on Yelp under the fictitious name "Francine F."

d.      On October 2, 2019, Defendant Mason submitted the false negative review on Yelp under her own name.  Knowing the submission was false, Defendant Mason subsequently deleted it.

-42-

1        e. On October 3, 2019, Defendants posted the false "review" on

2    Yelp under the name of purported customer "Debbi O."

3        f. On October 7, 2019, Defendants posted the false "review" on

4    Yelp under the name of purported customer "Renee R.":

5        g. The October 8, 2019 submission makes a positive assertion

6    about "a really knowledgeable lady in [Health Mate's] tech department" that the

7    writer purportedly "work[ed] with" six months earlier and asserts that Health Mate

8    "got rid of the techs that knew anything about these units."  These assertions

9    referred to Defendant Gordon and Defendant Mason without actually naming

10   them.  The purpose of the false October 8, 2019 submission was to disparage

11   Health Mate and bolster Defendants' reputations.

12      131. On or about October 11, 2019, Yelp removed the October 8, 2019

13   submission, apparently because the submission was obviously false.

14      I declare under penalty of perjury under the laws of the United States that

15   the foregoing is true and correct.  Executed on March 12, 2020 at Buena Park,

16   California.

17

18

19   COREY SMEE

20

21

22

23

24

25

26

27

28

**DECLARATION OF COREY SMEE IN SUPPORT OF PLAINTIFF'S**
***EX PARTE* APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER**
**TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**